DAVID GRIMM v. THE ESTATE OF THOMAS TAYLOR, DECEASED.

*Estates of deceased persons — Claims—Contract for support— Consideration.*

1. The words, " aiding and supporting Ann Grimm and children," used in a claim filed against the estate of a deceased person, are broad enough to include aid and support by the contribution of money.

2. Where, upon the divorce of his parents, a minor son is emancipated by his father, and, at the request of his mother's brother, remains at home and aids in the support of his mother and minor brothers and sisters, upon the uncle's promise to pay him for his services, he can recover the value of the services so rendered of his uncle's estate.[1]

3. Where, on the hearing of a claim filed by a son against the estate of his uncle for aiding in the support of his mother at the uncle's request, the only testimony tending to show an agreement by the uncle to pay a specified sum for such services is the statement of the deceased that he had hired the claimant, and intended when he died to leave him $1,000, it is error to submit that question to the jury.

Error to Macomb. (Canfield, J.) Argued April 20, 1893. Decided June 1, 1893.

Appeal from the disallowance of a claim against the estate of decedent. The executor brings error from a

---

[1] See *Howe v. Hyde*, 88 Mich. 91.

judgment of allowance.    Reversed.    The facts are stated in the opinion.

*Dwight N. Lowell (Eldredge & Spier,* of counsel), for appellant.

*Franklin P. Monfort,* for plaintiff.

MONTGOMERY, J.    The deceased, Thomas Taylor, and claimant's mother were brother and sister.    In 1875 the sister, Mrs. Grimm, was divorced from her husband, and at this time the claimant was 16 years of age.    The claimant introduced evidence tending to show that at this time, and at various times thereafter, Mr. Taylor requested David to remain at home with his mother, and to care for her and his minor brothers and sisters, contributing from his wages and earnings, and promised him that he would pay him well for it when he was through with his money. The claimant offered further testimony to show that he did remain at home with his mother, and did contribute to her support, and to that of the minor children, and that Mr. Taylor at various times acknowledged himself satisfied with the manner in which he was complying with his request.    The claimant recovered a verdict of $1,000. The executor appeals.

The assignments of error are numerous. We do not deem it necessary to discuss all the questions raised, as many of them are not likely to arise upon another trial. The questions which we deem important are whether the claim filed in the probate court was broad enough to admit the evidence offered; whether the testimony offered tended to show a valid agreement; and whether the proofs were such as to admit of submitting the question to the jury as to whether there was an express agreement to leave to plaintiff $1,000 by will.

1. The claim filed was not a formal document.    It

had not the elements of a declaration, but this is not required. It was in the form of an account, and read as follows:

*"Estate of Thomas Taylor, Deceased,*
" IN ACCOUNT WITH DAVID GRIMM, DR.
" To services in the care and aiding and supporting Ann Grimm, sister of deceased, and minor children of said Ann Grimm, from November 15, 1875, up to the time of the death of the deceased, February, 1889, at the special instance and request made by said deceased in his life-time, at $150 a year,— 15 years and 3 months_____$2,287.50."

It is claimed that this account did not admit of proof that the claimant contributed money to the support of the family; but we think the language, "aiding and support. ing Ann Grimm and children," is broad enough to include aid and support by the contribution of money.

2. Did the contract, as proven, create a valid obligation? 'It is said that the claimant did no more than he was legally and morally bound to do; but this is not so. The father was the one legally entitled to the claimant's services, and it is fairly inferable from the testimony that he was emancipated by the father. He might have left home, but the testimony offered on behalf of the claimant tended to show that he remained at the special request of the deceased, and upon his promise to pay him for his services. This furnished a sufficient consideration. *Waldron v. Alexander,* 133 Ill. 30; 136 Id. 550 (24 N. E. Rep. 557; 27 Id. 41); *Hamer v. Sidway,* 124 N. Y. 538 (27 N. E. Rep. 256). It was strenuously insisted upon the argument that the evidence offered amounted to no more than an assurance by the deceased that he would remember the claimant in his will, and that claimant did not rely upon such assurance as in the nature of an express contract or promise. We agree, fully, that the danger attendant upon the assertion of claims of this character is such that

the trial court should see to it that the jury are not mis-
led into assuming an express promise from mere loose
expressions of commendation or assurances; but there is
sufficient evidence in this record to justify submitting the
question to the jury as to whether the services were in
fact rendered in reliance upon the uncle's promise.

3. The circuit judge instructed the jury, among other
things, as follows:

" If you find from the evidence that David Grimm was
induced to perform the services in question for the family
of his mother upon the promise of his uncle, Thomas
Taylor, to give him $1,000 upon his death, by and through
a will, and you also find that no compensation was made
in and by the will,—and about that there is no dispute,
that the compensation was not so made,—then you will
find for the plaintiff in the sum of $1,000."

It is contended by the counsel for the estate that there
was no evidence to justify submitting this question to the
jury.   The testimony offered on behalf of claimant was that
of his mother, who testified, in answer to the question,
" Did he say when or how he would pay him?" " Well,
it was when he was done with the property.   He always
told me he would leave me a thousand dollars, too, as well
as him."   Referring again to the same conversation:   " I
heard him tell Dave to stay, and be a good boy, and work,
and turn all he could, and get things, what he could, for
the benefit of the children and myself.   "Q. Was that
all that was said?   "A. That is all I heard,—all but that
he would pay him well if he would stay and do what he
could."

Again, on redirect examination she testified, in answer
to the question, " What did he say about how he would
pay him?"   "A. Well, when he was through with his
property, after his death,—that was the time.   He was to
give me $1,000, too."

Charlotte Grimm, a sister of claimant, testified that, in

1883, claimant told her uncle that he wanted to go away, because he thought he could do better. The uncle said, "No, he did not want him to go; to stay here, help all he could, give all the service he could to help mother bring up the rest of us; and he would pay him, and would pay him well, if he would." In answer to the question, "Did he in either of these conversations say how he would pay him?" she testified: "He spoke several times about his death. He was speaking several times about willing so much at his death."

Martha Chamberlain testified to a statement made by the deceased; that on one occasion the deceased said to her that "he had helped them [referring to Mrs. Grimm's family] some, and intended to help them more. He said, 'I must have that boy David stay with his mother;' and, said he: 'I shall give him a thousand dollars, or more, if necessary. I shall stand by him just as long as I live.' I did not hear him speak of any arrangement with David." On cross-examination she testified: "He said he would stand by him as long as he had anything, and give him a thousand dollars, and even more. He said he had no children, and he thought it was a charity for him to do this."

Hiram Eldred testified for the claimant to a conversation with the deceased, in which he said "he had hired him to stay at home; said he wanted to go off with the other boys,—Al., I think,—and David wanted to go, but he had hired him to stay. Don't remember of his saying when or how he was to pay him."

Margaret Hovey testified to a statement of the deceased, in which he said "David had done well; he was a good boy. Said he had hired him, and he intended, when he died, to leave him a thousand dollars. Had no other talk with him on that subject after that."

Ann Wood testified to a statement of the deceased, as follows: " 'I promised to pay him well for his work, and I am going to do it.' He said David had done just what he had hired him to do, and he had been a faithful boy."

George Wood testified to a conversation with the deceased: "He said he hired him to take care of his mother, and to look after the family; that he had no fault to find, and he intended to pay him. Didn't say how he calculated to pay him."

This comprises the testimony offered on behalf of claimant upon the subject-matter of how he was to receive his pay. The only testimony tending, in the slightest degree, to support an agreement to pay a thousand dollars at his death, is that of Mrs. Hovey, who couples the statement of the deceased that he had hired the claimant with the statement that he intended to leave him a thousand dollars. This, however, is not inconsistent with the alleged contract which the other testimony tended to show,—that he was to pay him well for his services,—and does not tend to show that the agreement between the deceased and claimant was that he was to receive $1,000. This might not have been damaging error, but for the fact that the claimant's mother was permitted to testify to an understanding that the deceased was to leave her a thousand dollars, as well as the claimant, and the jury might have confounded the two statements. We think that in a case of this nature, where loose statements of the deceased are so liable to misconstruction, extreme care should be exercised that the jury be not permitted to determine the case upon their own ideas of justice, without regard to whether a distinct contract was made; and that it was error to submit to the jury the question of whether there was a distinct contract to pay the claimant $1,000 for his services rendered.

For this error the judgment will be reversed, and a new trial ordered.

The other Justices concurred.