RHEA v. MEYERS' ESTATE.

1. CONTRACTS—UNCERTAINTY.

The jury may find that the parties to an agreement, whereby an employer promised to give an employé for her services "the cottage" where he then lived, understood each other with reference to the real estate involved, and that the contract, accordingly, was not void for uncertainty, from evidence showing that a certain parcel of land upon which the cottage stood was purchased several years after the adjoining land, and that the employer always referred to this purchase as the "Cottage."

2. STATUTE OF FRAUDS — VERBAL AGREEMENT TO CONVEY LANDS —EVIDENCE.

A verbal agreement to convey land in consideration of personal services may be considered in estimating the value of the services in an action to recover therefor, although there have been no acts of part performance by the promisor. *In re Williams' Estate,* 106 Mich. 490, followed.

Error to Kent; Adsit, J. Submitted November 12, 1896. Decided December 9, 1896.

Frances Rhea presented a claim against the estate of Jacob Meyers, deceased. The claim was allowed in part by the commissioners, and the estate appealed to the circuit court. From a judgment for claimant, the estate brings error. Affirmed.

*John S. McDonald* (*Hatch & Wilson,* of counsel), for appellant.

*C. H. Gleason* (*Arthur Lowell,* of counsel), for appellée.

MOORE, J. Mrs. Rhea presented a claim against decedent's estate as follows:

Wages from May 20 to July 3, at $15, one and
one-half months_____  $22 50
Wages for attending store nine months, extra____   45 00
Value of cottage and store building and ground
promised claimant by deceased for services_____ 2,500 00
Work and labor done for deceased at his request,
agreed to be paid for by his property known as
the "Cottage"_____ 2,500 00
Interest at 6 per cent. after July 3, 1894_____
Work and labor done for deceased at his request__ 2,500 00
Interest at 6 per cent. after July 3, 1894_____

The commissioners allowed claimant $1,720. An appeal was taken to the circuit court, where a jury rendered a verdict in favor of claimant for $2,790. The estate appeals.

Jacob Meyers died in June, 1894, at Grand Rapids, where he had lived many years. At the time of his death he left no children, but left an estate of upwards of $20,000. His wife died in June, 1889. At this time Mrs. Rhea was a resident of Clyde, N. Y. It is the claim of Mrs. Rhea that Mrs. Meyers desired Mrs. Rhea to come on to act as housekeeper for Mr. Meyers; that Mr. Meyers telegraphed for her, and that she arrived three days before Mrs. Meyers' death. The evidence discloses that for many years before his death Mr. Meyers had been a hard drinker, and that the habit was worse after his wife's death. When he was under the influence of liquor, he was unfit to do business, and was given to squandering his money, and making foolish bargains. It is the claim of Mrs. Rhea that she acted as Mr. Meyers' housekeeper and cook, and that when he was ill or drunk she acted as his nurse, and took charge of his money and business; that Mr. Meyers knew his failings, and instructed Mrs. Rhea, when he began a spree, to take charge of his money, watch, diamonds, and keys; that she did this, and, when he got sober, returned them to him; that when drunk Mr. Meyers had to be watched constantly, as he would fall and hurt himself, and would drink anything within reach, even though it was hurtful; that he would

light matches and cigars, and throw them down while on fire, imperiling his person and property; that when drunk his habits were filthy; and that she had to and did look after him.    It is also claimed by her that she found the work so hard that she left Mr. Meyers, and went to work as a cook for Mr. Stevens, for $8 a week, and board for herself and daughter.    It is her claim that Mr. Meyers came to her there, and urged her to return; that she at first declined, but that she finally consented to go, upon his promise that if she would go back he would give her $15 a month, and the cottage where he then lived, for her services, and that this was a renewal of a promise he had made to her before.    It is her claim that under this agreement she went back, and performed services for him of the character already described until his death, a period of nearly four years; that at the time of Mr. Meyers' death he had paid her in part, but had not deeded or willed her the cottage.    On the hearing she introduced testimony tending to support her claim, and it is evident that the jury believed her claim to be established by the evidence.

It is claimed for the estate that this contract, even if established, is not good, because it lacks definiteness, and because it cannot be ascertained what was meant by the parties when they spoke of the "Cottage."    It is said to be impossible to tell whether the parties intended to include simply the building in their agreement, or whether land was to be included, and, if land, how much.    We do not think this contention can be sustained. The evidence discloses that a piece of land 49 feet front and $222\frac{1}{4}$ feet deep, with the cottage upon it, was bought by Mr. Meyers, eight years after he purchased the land adjoining it.    Some of the testimony is that he always referred to this purchase as the "Cottage," and the jury were justified in concluding that Mrs. Rhea and Mr. Meyers understood each other with reference to the real estate Mrs. Rhea was to have, if she performed her contract.

It is also claimed on the part of the estate that the contract is void for all purposes, because: "*First*, it is founded upon a pretended verbal agreement to convey land, and is void under the statute of frauds; *second*, because there was no such part performance as would take it out of the statute; *third*, because plaintiff was never let into possession, and never made any improvements,"—and that the jury should not have been allowed to consider it in estimating the value of plaintiff's services, or the amount she was entitled to recover from the estate. The questions thus presented by counsel were at issue in the case of *In re Williams' Estate*, 106 Mich. 490. We think this case must govern the case now under consideration. In that case, Justice McGRATH entered into a full and detailed discussion of the issues involved. His opinion was so recently handed down that it is not necessary to review the authorities here. We do not think there was error in the trial of the cause.

Judgment is affirmed.

The other Justices concurred.