## LUIZZI *v.* BRADY'S ESTATE.

1. ESTATES OF DECEDENTS—CLAIMS—ENLARGEMENT ON APPEAL.
   Where a written claim against a decedent's estate as filed with
   the commissioners was for attendance and services during
   the lifetime and last sickness of decedent, claimant was not
   entitled, on appeal to the circuit, to enlarge the claim to cover
   demands for bedding belonging to claimant which was de-
   stroyed because of the nature of decedent's ailment, nor loss
   of profits to claimant's business of boarding-house keeper by
   the dismissal of a number of her boarders in the interest of
   quiet and proper nursing of decedent.

2. SAME — APPEAL — TRIAL — EVIDENCE — ATTEMPT TO EXECUTE
   WILL.
   On appeal to the circuit court from the disallowance of a claim
   for attendance and services during the lifetime and last ill-
   ness of a deceased person, evidence that decedent attempted
   to execute a codicil to her will to add a bequest to claimant
   in a sum equivalent to her claim was inadmissible.

3. SAME—ERROR—CURE BY CHARGE.
   Error in admitting evidence that decedent attempted to exe-
   cute a codicil to her will to add a bequest to claimant in a
   sum equivalent to her claim was not cured by an instruction
   limiting the evidence to its bearing on the intent to pay
   something.

4. SAME—SERVICES—PRESUMPTIONS.
   As to services during the last illness of a decedent for board,
   room rent, and the board and rent of nurses, presumptions
   both of law and fact arise that payment is to be made there-
   for.

5. SAME—EVIDENCE—RELATIONS OF PARTIES.
   In such a case the relations of the parties and the circum-
   stances under which the services were rendered may be
   shown, and the sum usually paid to persons who render ser-
   vice for hire, and the ordinary charges for rooms and board,
   are not necessarily controlling.

6. SAME—QUESTION FOR JURY.
   Where the services and attendance for which claim is made
   extended over a period of two years prior to decedent's death,

and there is any evidence that there was an understanding that they should be paid for, claimant is entitled to go to the jury.

7. Same—Statements of Decedent.

Statements of decedent tending to show that the services were rendered in accordance with a mutual understanding of the parties that they were to be paid for are admissible when limited to the purpose of showing such an understanding.

8. Same—Matters to be Proved.

To entitle a claimant to enforce a claim against a decedent's estate for attendance and services it is essential to offer evidence from which the value of the services may be found, and whether they remain unpaid.

9. Same—Statements to Attorney.

Testimony of decedent's lawyer as to what decedent said to him on the subject of a proposed codicil to her will, to add a bequest to claimant in a sum equivalent to the amount of the claim, was inadmissible to show the value of claimant's services.

10. Same—Evidence—Sufficiency.

Evidence taken on the hearing of an appeal from the determination of commissioners on claims examined, and *held*, insufficient to show a valuation placed by decedent on claimant's services.

Error to Wayne; Donovan, J. Submitted February 15, 1905. (Docket No. 156.) Decided May 12, 1905.

Alice M. Luizzi presented a claim against the estate of Alice L. Brady, deceased, for services rendered. The claim was allowed in part by the commissioners, and claimant appealed to the circuit court, where there was judgment for claimant, and defendant brings error. Reversed.

*Moore & Moore*, for appellant.

*John J. Jackson*, for appellee.

Ostrander, J. Alice L. Brady died testate September 17, 1902. Her estate was valued by appraisers at $21,216.-85. A total of $18,865.57 of claims was presented to the commissioners, of which $11,786.59 was allowed. The

specific legacies in the will are $3,130, and a residuary legatee is named. Two appeals are pending, involving $6,139.75 of the disallowed claims. One of the claims presented was that of appellee, the demand being in the following form:

"DETROIT, MICH., November 20, 1902.<br>
"Estate of Alice L. Brady, Deceased, Dr.<br>
"To Alice M. Luizzi.

"Attendance and services during lifetime and
    last sickness ............................... $2,500."

The commissioners allowed $500 of this claim and disallowed the remainder, and claimant appealed to the circuit court for Wayne county, where the appeal was tried by the court and a jury, resulting in a verdict for the entire demand. The errors assigned relate principally to the enlargement of the claim in the circuit court, to the admission of testimony showing that the deceased attempted during her last moments to execute a codicil to her will in favor of claimant, and to the charge of the court.

It appears that Mrs. Brady was left a widow in November, 1900; that her husband had conducted a business in Detroit, which business she later assumed to manage, and to which she devoted a great part of her time until she died. She had no children. Claimant kept a boarding house and Mrs. Brady became acquainted with her a short time after the death of her husband, when she went there to board, and where she remained a boarder for nearly a year. A friendship seems to have resulted, of which Mrs. Brady often made mention, and is evidenced by the fact that at the home of one or other, or away from home, they were frequently together, and by the further fact that Mrs. Brady, nervous and somewhat hysterical of temperament, called frequently upon claimant for the attentions and services which only a friendly person of her own sex could give her. There is testimony to the effect that, beginning in October, 1901, and with one interval, continuing to the time of her last illness, Mrs. Brady gave her time to her business from 9 o'clock a. m. until 9 o'clock

p. m., sometimes until midnight, lunching down town, frequently getting a cup of tea late at night at claimant's home. There is also testimony to the effect that in October, 1901, and thereafter, Mrs. Brady spoke of doing something for claimant, whom she described as a hard-working woman, and that she hoped some day to buy her a home. Just before Christmas, 1901, Mrs. Brady underwent an operation at a hospital and before doing so, and on December 19, 1901, she made her last will. In this will there is no mention of claimant. She left the hospital during January, 1902, occupying herself again with her business until August 17, 1902, when she became ill, was taken to claimant's house, and there died of typhoid fever. An hour before she died she sent for a lawyer, who prepared a codicil to her will, the intended beneficiaries of which were claimant and a Richard Tregaskis. She died while the instrument was being drawn. Two professional nurses were employed for Mrs. Brady during her last illness. She had, at the time of her last illness, something like $5,000 on deposit in banks. Upon the trial no testimony was offered of the value of any attendance or of any services rendered by claimant. Counsel for claimant sought to prove that various articles of bedding belonging to claimant were, because of the nature of the decedent's ailment, required to be destroyed, and that claimant dismissed a number of her boarders in the interest of quiet and proper nursing of decedent. No testimony was given as to the value of these articles, or the amount of any loss resulting from discharge of boarders. To this testimony counsel for the estate objected that the claim presented was for attendance and services, and that to admit such testimony would be to enlarge the demand. Upon the objection being made, the court said:

"That is a very close case—whether that comes under the rule. I think it does. I think the statute of amendments is so broad in our State, and it goes on to say that the court shall have power to amend any process or pleading or proceeding for the furtherance of justice at any

stage of the proceedings. Now, if you want to put in a claim, you may.   *   *   *

"*Mr. Moore:* We object on the ground that the issue cannot be broadened.

"*The Court:* I don't think it can be made any larger.

"*Mr. Moore:* I object to the court's amending, because the claim, as presented in probate court, cannot be enlarged or added to on appeal.

"*The Court:* I will say that we have not added to the ad damnum clause. We haven't asked for any more than they ask for there."

It was further objected that the testimony was incompetent and immaterial. The objections were overruled, and the testimony admitted. No amendment of the claim was made. This testimony should have been excluded. *Patrick* v. *Howard*, 47 Mich. 40. Counsel for appellee says, in his brief, that testimony concerning these items "was given before the commissioners on claims the same as at the trial, and is a proper charge under the expenses of the last sickness, and further comes under a long line of decisions holding that such a charge is a charge of necessity, and is always allowed as a preferred claim, the same as funeral expenses." The question before us is not whether these matters might have supported a claim for their value against this estate. A written claim was filed in probate court. The claim does not lack formality. The record does not inform us of the course of the proceedings before the commissioners with reference to this claim. Undoubtedly, rules governing the sufficiency of pleadings are not to be applied to claims filed in probate court. Great latitude as to the form and the amendment of claims is and should be permitted before commissioners on claims. *Comstock* v. *Smith*, 26 Mich. 306.

In the absence of a bill of particulars or any demand on the part of the estate for a more express and specific statement of the claim than the one filed, the court would construe with liberality the words "attendance" and "services," and admit proof of all acts fairly coming within the meaning of the words. The form of the claim, by which

we are governed, affords no indication that it was meant
to cover demands for property destroyed, or for loss of the
profits of a business, to which the proof in question was
addressed.    This court has been in several cases called
upon to pass upon a similar objection.    In none of the de-
cisions has the rule of *Patrick* v. *Howard* been overturned.
*Grimm* v. *Taylor's Estate*, 96 Mich. 5; *King* v. *Brewer*,
121 Mich. 339; *Allen* v. *Fields' Estate*, 124 Mich. 466;
*Dayton* v. *Dakin's Estate*, 103 Mich. 65.

Upon this subject, the court charged the jury as follows:

" In estimating the value of the services rendered during
the last sickness you should consider the loss to Mrs.
Luizzi's business, being some fourteen or fifteen boarders
there, and the testimony being uncontradicted.    She sent
them away under the agreement with Mrs. Brady to pay
for her loss.

" You will also take into account, in the estimation of
the value of the services of the last sickness, the loss of
mattresses, bedding, and other things, and pillow slips,
and at the last the board and room rent of the two nurses
and Mrs. Brady during the time as not being boarders
then when she was taken sick."

Counsel for claimant, over objection, introduced testi-
mony of what decedent said to her lawyer with respect to
the terms of the proposed codicil to her will.    The first
witness, a nurse, testified:

" She said she wanted to leave Mrs. Luizzi $2,500 for a
home.    That is all I remember."

On motion to strike out this testimony, the court said:

" I want to say so that the jury can get this.    I will not
say that the estate is bound to give this amount, or that
you are bound to give this amount.    In the *Dickerson
Case* they gave—and sustained in the Supreme Court—
they gave the value of the farm which the old gentleman
said, ' You may have the farm when I am through with
it.'    They gave the value of it as bearing upon that ques-
tion only.    It isn't arbitrary.    If he had said, ' I will give
you that lounge, or that chair, or that stove,' that would
be a complete gift, and the will for that personal property

right then; but this is only bearing upon her recognition of the services, that the jury may take it into account that she recognized something as going to the woman. They have that subject before them. It isn't arbitrary on that account."

By other witnesses the same evidence was offered, and was received. Whether the proposed legacy was to be made to claimant, and to be money, or whether a sum was to be used by the executor to buy a home, does not clearly appear. The objections to this testimony, and the exceptions taken to the charge of the court upon the same subject, will be considered together.

The charge to the jury shows that the following language was employed:

"About 23 years ago—just a little more than 23 years ago—when the law was unsettled in this State, one of the counsel in this case, and the one who reads you this decision, brought before the Supreme Court a case for services, and I read what the learned judge said (Judge COOLEY) in the 50 Mich., page 37 [*Dickerson* v. *Dickerson*]:

" ' A son is entitled to recover from his father's estate the value of his services in working his father's farm, and taking care of his parents until their death, if his father applied to him to do these things and promised that he should have pay for his services, and also that after his death he should have the farm, and if the value of the support and services exceeded the value of all he obtained from the farm, and no arrangement was made by which it really became his property.'

"I can make that plainer in his own words: The young man, Dickerson, took his father and mother over to his home to take care of them. They became old. They had no pay arrangement, except the old gentleman said they should be well paid, and they should have the farm when he got through with it. In proving up the services, inasmuch as the farm could not be deeded by a verbal talk of that kind, they allowed the value of the farm as bearing upon the question before the jury as to what he intended to pay for the services. The same doctrine has been handed down now for several years. In the 106 Mich. [page 490], in the *Williams Estate*, a verbal contract to deed land to

an adopted girl may be shown to prove the intent to pay for the services. Again, in the 107 Mich. [*Salmon* v. *Wood*, 107 Mich. 506], a daughter suing for her services, it was proven that the father promised to pay for the services, and intended to deed the farm, and did deed the farm, but, the wife having failed to join in the deed, and it being a homestead, the deed was void. It was held it was proper to prove the value of the land as the measure of what she was to be paid for her services—prove that verbally. And a very recent case (in which Mr. Moore comes back into court again) on verbal evidence to show intent of the party, is reported in *Crippen* v. *Adams*, 132 Mich. 31, decided December 16, 1902, where out here at Plymouth, a man expressed on his dying bed and before that time that he wanted to pay his domestic something if he could; that he had some stock or something that he was anxious to turn over—at least $500—and in going after the stock they brought forward $4,500. The Supreme Court held his intent could be carried out, but not the $4,-500; his intent, he having expressed the idea of $500. These cases here only show you how they regard these claims that have been made, and that we have in this case.

"I charge you then, first, for the plaintiff, as follows: Under the evidence in this case your verdict should be for the claimant, Mrs. Luizzi, and the only question for you to consider is the value of the services rendered. * * * And in fixing the amount the plaintiff is entitled to recover you may consider the codicil and the conversation in regard thereto as bearing upon the intent to pay for the services. In determining the question as to whether there was any understanding between the deceased and claimant, Mrs. Luizzi, to compensate her for services you may take into account the attempted making of the codicil; that is, as bearing upon the intent to pay something."

It is true that the learned trial judge said more than once that he admitted this testimony upon the theory that it was competent as showing an intention to pay for services rendered—to negative the idea that the services were considered by decedent as gratuitous. When counsel offered this matter, he stated to the court:

"I am not offering this to show the amount. It is right to go to the jury as showing whether there was any intention or whether there was any understanding."

In his brief counsel for claimant says:

" We submit there was no error in the charge of the
court. Nowhere was the conversation in regard to the
proposed codicil admitted as bearing upon the amount
that should be paid, as claimed by counsel for the estate;
but even admitting, for the sake of argument, counsel's
contention, even then there would be no error in allowing
the jury to consider the amount mentioned as having a
bearing upon Mrs. Brady's estimate of Mrs. Luizzi's ser-
vices, the jury having found there was an understanding
to pay for such services, the cases holding that this
evidence is admissible for this purpose."

We are of opinion that what the court said in admitting
this proof and in the charge to the jury amounted to an
invitation to the jury to allow the demand at the sum of
$2,500. This conclusion is aided by the fact, already men-
tioned, that no testimony of the value of her services was
introduced by claimant, and that the amount of the claim
presented is $2,500. The testimony of the amount of the
proposed bequest should have been rejected as matter of
law. Its admission was not cured by the charge of the
court, and the testimony was plainly prejudicial to the
estate.

It is the theory of claimant, evidenced by the claim filed
and by statements made by her counsel, that she per-
formed services for decedent under circumstances which
require that she be paid for them what they were worth.
The proofs support this theory. Counsel for the estate
admit this. It was not matter of contention that claimant
is entitled to have allowed to her whatever the attendance
and services, proved to have been rendered, are reason-
ably worth. The questions of fact were, what was the
extent of claimant's performance, and what was it
reasonably worth? It is not contended that claimant
rendered any services in consideration of a promise to
give her $2,500, or any other sum, by will, or at the death
of decedent, or at any other time. It is not claimed that

services were rendered in consideration of a promise to buy her a home, or to leave money by will to buy a home. It is apparent, therefore, that many of the cases relied upon by counsel, some of which the court brought to the attention of the jury, are not in point, even if the testimony fairly disclosed the fact that decedent proposed to change her will in order to pay claimant for services. In these cases—*In re Williams' Estate*, 106 Mich. 490, *Sammon* v. *Wood*, 107 Mich. 506, and similar cases—the contract asserted and proved or the understanding relied upon was that for the services performed the specific property was promised in payment, and in one, at least, of the cases, conveyance of the property was actually made by decedent, but failed of being effective in law. In the opinion in *Re Williams' Estate*, the court undertook to distinguish between holdings like the one in *Hillebrands* v. *Nibbelink*, 40 Mich. 646, in which the familiar rule that no rights can be predicated of an executory contract to convey land resting wholly in parol is applied to the claim of a son against the estate of the father, and cases where the land, or other specific property bargained or promised, has been earned by performance of services pursuant to agreement or understanding.

It is evident, also, from the record, that claimant sought to recover for services and attendance which in law fall into two distinct classes, and, as the case must go back for a new trial, some analysis of the claim is undertaken. For such services as were given during the last illness of decedent, her board, room rent, the board and rent of the nurses, if furnished, there are clear presumptions, both of fact and of law, that they were to be paid for, and were in no sense gratuities. No proof was required of any contract to pay for them other than the law implies. *O'Connor* v. *Beckwith*, 41 Mich. 657. Undoubtedly, the relations of the parties and the circumstances under which services were rendered may be shown, and the sum usually paid to persons who render service for hire, and the ordinary charges for rooms and board, are not, necessarily,

controlling in cases like the one before us. But claimant was permitted to introduce proof, also, of attentions extending over a period of some two years. That these attentions were sought by and grateful to decedent seems clear, and counsel claims that they were rendered in accordance with a mutual understanding of the parties that they were to be paid for. To support this position, evidence of these attentions, and of what decedent said about them, was admitted; and without distinction, and without any evidence of the value of any of the services claimed for, the whole matter was submitted to the jury to make an allowance to claimant. We think claimant entitled to go to a jury upon this proposition if any testimony is produced warranting the inference that there was such an understanding as is asserted. And *Lathrop* v. *Sinclair*, 110 Mich. 329, and other cases cited by counsel, are to the effect that statements made by decedent may be received in evidence to show such an understanding or agreement. But such testimony should be limited to the purpose for which it is admitted, and in cases of this nature, as in others where a demand is asserted, testimony should be offered from which the jury may find the value of the services performed, and whether they remain unpaid for.

The contention of counsel for claimant that what Mrs. Brady said to her lawyer on the subject of the proposed codicil was properly admitted as bearing upon the estimate which Mrs. Brady placed upon the value of claimant's services is not sustained. The testimony of Mr. Burton, who was called to make the codicil, was:

" *Q.* Will you state to the jury what she said ?   *   *   *

" *A.* That she wanted me to draw a codicil to her will.

" *Q.* What did she say as to the terms of that ?   *   *   *

"*The Court:* Never mind as to the terms, but what was the central purpose—leading purpose—it was made for, if she said anything, Mr. Burton?

" *A.* She said she wanted to give Mr. Tregaskis and Mrs. Luizzi—   *   *   *

" *Q.* Wanted to give them for what?

" *A.* She didn't state what for, anything further than

what she wanted done with the money. She did state that as far as Mrs. Luizzi was concerned.

" *Q.* What was that?

" *A.* For her to purchase a home."

Add to this the statement made by decedent to Mr. Tregaskis that: " She hadn't paid her, but said she intended at some time to give her a home; said she was a hard-working woman; her boarders worked her, and that she wanted to compensate her for it, and she said some day she hoped to buy her a home." .

To the nurse Wier:

" She said she wanted to remember Mrs. Luizzi for her kindness to her through life. * * * She said she wanted to leave Mrs. Luizzi $2,500 for a home."

To the nurse Grow:

" Mrs. Brady said to me when she lived in the Savoy Flats that Mrs. Luizzi had been the best friend she ever had, and she expected to recompense her for what she had done for her, and she did not want any one to think she was doing it gratuitously. * * *

" She said she wanted to arrange her business matters to leave something for Mrs. Luizzi to buy a home. She said she had intended to do it, but hadn't done it, and she wanted to do it if she had got to die. * * *

" She said she wanted to add this codicil to her will, and she wanted to leave Mrs. Luizzi this amount—I don't know whether you want this amount, but $2,500—$2,500 to buy herself a home. * * *

" Well, for services she had rendered and the many little kindnesses, and she had been the best friend she ever had, she said, and she felt it was no more than her duty. * * *

" She said she was the best friend she ever had, and she expected to compensate her fully for what she had done.

" *The Court:* What words did she use?

" *A.* Substantially recognize her. * * * She never had repaid her for what she had done, and could not repay her in that way, but she intended to do something for her when she got her business in shape."

Another witness: " Mr. Larm, as soon as I can get my matters in shape, I will fix it for Mrs. Luizzi so that she

will not have to work so hard "—and we have all the proof upon the subject. That these statements are evidence of a valuation by decedent of claimant's services is denied; that they are evidence of unpaid services is doubtful; that they are evidence of bounty is clear.

The allowance of the claim must be set aside, with costs, and a new trial granted.

CARPENTER, BLAIR, MONTGOMERY, and HOOKER, JJ., concurred.