BUELL *v.* ADAMS.[1]

1. CONTRACTS—ESTATES OF DECEDENTS—CONSIDERATION.
   Where it conclusively appears that deceased agreed to compensate claimant for caring for his sister, either by giving her a life estate in certain land and a conveyance of the fee after the sister's death, or by a payment of a certain sum yearly, it was a question for the jury to determine which contract was made, and either was supported by good consideration.

2. SAME—BREACH—EXECUTORS AND ADMINISTRATORS.
   Refusal by the administratrix to carry out an oral contract for the conveyance of lands operates as a breach, if it was intended to bind the executors and administrators of deceased.

3. IMPLIED CONTRACT—WORK, LABOR AND SERVICES.
   Upon the failure to perform an oral contract to convey lands of the deceased, in payment for services rendered, an agreement is implied by law to pay the fair value of the services.

4. TRIAL—INSTRUCTIONS TO JURY.
   It is error for the court to intimate to the jury his opinion that they should find the issue of fact against the claimant.

Error to Marquette; Stone, J. Submitted May 5, 1909. (Docket No. 56.) Decided June 7, 1909.

Lucy P. Buell presented a claim against the estate of Sidney Adams, deceased, for services rendered. The claim was disallowed in the probate court, and claimant appealed to the circuit court. A judgment for defendant is reviewed by claimant on writ of error. Reversed.

*J. L. Heffernan,* for appellant.

*Hill & Smith,* for appellee.

BLAIR, C. J. Claimant filed in the probate court for

---

[1] Rehearing denied November 5, 1909.

Marquette county the following claim against the estate
of Sidney Adams, deceased, viz.:

| | | |
|---|---|---|
| To eight years' care of sister of deceased, Mary J. Warren, from June, 1893, to August, 1901, in a particular manner, according to written agreement, signed by Sidney Adams, agreeing to pay $200 per year | | $1,600 00 |
| Less payments on same as follows: | | |
| June, 1893 | $200 00 | |
| July 10, 1895 | 6 80 | |
| October, 1897 | 50 00 | |
| May 14, 1901 | 20 00 | |
| March 1, 1906 | 200 00 | 476 80 |
| Leaving a balance of | | $1,123 20 |

Mary J. Warren is the mother of claimant, and was a
sister of Sidney Adams. The probate judge heard and
disallowed the claim, and claimant appealed to the circuit
court. The case was tried before a jury in the circuit
court, who returned a verdict of no cause of action, and
claimant brings the record to this court for review, upon
the following assignments of error:

"(1) The court erred in holding that an implied agree-
ment could not be shown, under the circumstances of this
case, in case a special or express contract was not proven
under the decision in *Van Fleet* v. *Van Fleet*, 50 Mich. 1
(14 N. W. 671).

"(2) The court erred in respect to the request of appel-
lant (bracket 5 of charge) by qualifying it as in bracket 6
of charge. The other assignments of error are to charge,
brackets Nos. 1, 2, 3, 4, 7, 8."

Claimant's husband testified that the agreement was
contained in a letter which had been lost:

"*Q.* What did it say?
"*A.* It stated that Mr. Adams was to give this $200 a
year as long as we would take care of 'Mother.' He al-
ways worded it 'Mother' or 'Mary Jane.'
"*Q.* That was in the letter, was it?
"*A.* Yes, sir."

Mrs. McCormick, a sister of claimant, testified to a

conversation with Mr. Adams, in which he said, referring
to claimant:

"It will pay her to put up with a great deal from her
mother, to get $200 a year.' 'Well,' I said, 'if that is the
case, I have nothing more to say.' * * *

"Q. Did he ever say anything further about the $200
a year at any time?

"A. Yes; once afterwards. That was somewhere in
1899, when he was making an agreement with me to take
my aunt.

"Q. What did he say about this matter?

"A. He said he had her settled, and he was to give my
sister $200 a year, and of course that was along in the
conversation with what he would do for me because I
took my aunt."

Claimant testified that the letter containing the agree-
ment was received in May, 1893. She and her husband
testified to an exhaustive search for the letter, and inabil-
ity to find it. Numerous letters from Mr. Adams to
claimant, and several from claimant to Mr. Adams and to
his wife, the contestant herein, were received in evidence.
Mr. Adams went to California in September, 1902, and
remained in that State until he died, December 16, 1906.
The evidence tended to show that claimant assisted her
sister, Mrs. McCormick, in caring for her mother and her
aunt, as requested by Mr. Adams.

First assignment of error: The undisputed evidence in
this case shows that Mr. Adams was very solicitous to
arrange with claimant to take care of his sister, and we
think it appears with equal clearness that he expressly
agreed to compensate her therefor. The question of fact
on this branch of the case is as to the character of the
agreement. The testimony of claimant's husband and
sister tended to show a written agreement, in accordance
with the claim filed, to pay claimant for taking care of
his sister $200 per year. The documentary evidence
tended to show an agreement between the parties that
complainant should care for her mother as long as she
lived, for the use of a certain 40 acres till her mother's

death, with such reasonable amount of money as proba-
bly would be needed, and then a deed thereof, which
agreement was subsequently modified by providing that
claimant should assist her sister, Mrs. McCormick, in
taking care of both of Mr. Adams' sisters.   In our view of
this record an agreement in writing, signed by Sidney
Adams, to compensate, conclusively appears, and, aside
from the question of claimant's performance of the agree-
ment, the only question for the jury was whether Mr.
Adams agreed to compensate claimant by a yearly cash
payment, or by the use of the 40 acres during his sister's
life and a deed upon her death.   Either phase of the
agreement was supported by a good consideration, and
was binding upon the parties, if made.   *Grimm* v. *Tay-
lor's Estate*, 96 Mich. 5 (55 N. W. 447).   If the jury
found from the evidence that the agreement was for com-
pensation by deed, etc., which had been performed by
claimant, and performance of which had been refused or
rendered impossible on the part of Mr. Adams, they would
be entitled to find, and it would be their duty to find, an
implied agreement to pay her the value of her services.
*Van Fleet* v. *Van Fleet*, 50 Mich. 1 (14 N. W. 671);
*Dickerson* v. *Dickerson*, 50 Mich. 37 (14 N. W. 691); *In
re Williams' Estate*, 106 Mich. 490 (64 N. W. 490);
*Sammon* v. *Wood*, 107 Mich. 506 (65 N. W. 529); *Rhea*
v. *Meyers' Estate*, 111 Mich. 140 (69 N. W. 239).

The circuit judge instructed the jury that claimant
could not recover anything:

"Unless you find by a preponderance of evidence that
there was a special agreement upon the part of Mr. Adams
to pay this $200 a year.   Why?   He was under no legal
obligation to support this woman, Mrs. Warren.   True
she was his sister, but she was also the mother of claim-
ant.   We have not been shown any law of the State of
Wisconsin as to what the law of that State is as to the
duty of Mrs. Buell to support her own mother.   We sim-
ply leave it there, I say, and there was no legal obligation
on the part of Mr. Adams to do it.   And she cannot
therefore come into court and say that, because she has

taken care of Mrs. Warren, she has a just claim against Mr. Adams' estate for it, unless she shows there was an agreement to that effect. And right there, gentlemen, you are up against the proposition: Has the claimant shown you by a preponderance of evidence that there was such an agreement, made in perhaps the month of May, or possibly June, in 1893? The letters bearing date during May of that year do not express any such agreement. They refer to another transaction. They refer to a proposition of buying a 40 acres of land, and holding it for the benefit of these parties, the use of which they seem to be contemplating to have. But there is a claim before the court, gentlemen, that one letter is missing. There has been evidence offered here sufficient to permit the evidence to reach you at least tending to show the loss of a letter, and I invite your attention to that. It is claimed really here by the claimant that in a letter written about the time that I have mentioned, Mr. Adams stated to the claimant that he would give $200 a year to her for the support of Mrs. Warren as long as she and the family would take care of her. That is the claim here."

After referring to the testimony of claimant's husband and sister, the court proceeded:

" I have called your attention to the only two items of testimony which I think tend to show any agreement on the part of Mr. Adams. You have listened to the testimony as adduced in these letters, this correspondence back and forth. Is there anything else, gentlemen, in all this correspondence, at least after 1901, that in any way indicates that Mr. Adams was to pay a specific sum ? * * * But notwithstanding anything that Mr. Adams stated in these letters in 1888, 1889, or 1901, unless you shall find that he made the express promise to pay $200 a year, for the support of Mrs. Warren in 1893, just before she went down to Wisconsin, then you ought not to find in favor of this claimant, for the other letters in evidence are contradictory of this claim. They all seem to bear on the question of buying the 40 acres of land and giving Mrs. Buell the use of it until the death of Mrs. Warren, when, as I understand it, the property was to be Mrs. Buell's. Mrs. Warren is still alive. There can be no claim, therefore, based upon that proposition, and the fact that Mr. Adams did buy a piece of land and deed it, or caused it to

be deeded, to Mrs. Buell, and had paid the interest upon some portion of it for a time and still seems to hold a mortgage upon this property, as I understand it—the mortgage is undischarged, or has it been discharged?

" *Mr. Hill:* No; in 1901 the Buells took it up and carried the mortgage in Wisconsin.

" *The Court:* Very well. That mortgage is out of the way, as I understand it."

The fact that Mrs. Warren is still living would not, in our opinion, interfere with claimant's right of action if the jury should find, as the evidence tended to show, that it was understood between Mr. Adams and claimant that, if he had not carried out the agreement on his part at the time of his death, Mrs. Adams, the administratrix, would do so, and she refused so to do. While the 40 acres was deeded to claimant in the first instance, she gave a mortgage for the purchase price to Mr. Adams, which he assigned to Mrs. Adams, and which claimant raised the money to pay by giving another mortgage. Mr. Adams' letters tend to prove that he was to pay the mortgage. However, claimant's counsel appear to have put this question out of the case in their brief, saying, after quoting the language of the court:

"Claimant, contending that she did not enter proceedings for the '40 acres' of land, did not at any time make an issue of it, and because she always owned it herself, said Adams never having had title, the court thereby misstating the testimony, and giving an issue to the jury unwarranted by the evidence. Another misstatement that is prejudicial is that 'All the letters seem to bear on the question of buying 40 acres of land' (bracket No. 4), as only three letters out of the 38 in evidence refer to it, namely, those of May 21, 1903, May 24, 1903, and July 15, 1900."

Second assignment of error: The court instructed the jury in part as follows:

" To determine whether there was an express agreement made, you ought to take into consideration all the surrounding circumstances; all these other letters. And the only reason why the court did not take this case from

you on the ground that this claim, this oral testimony, is so inconsistent with writings that it ought not to be considered is because it is claimed by the claimant that this very promise itself was in writing, and of just as high a character as any of the other correspondence, and therefore we have to submit to you the question of fact as to whether that is true—whether you find the testimony of the husband of the claimant is true—that there ever existed such a letter, whether it is probable that any such letter was ever written, in the light of all this other correspondence. Now, it is true, gentlemen, in cases of this kind, where one of the parties' mouth is closed, as our Supreme Court has said:

" 'The exclusion of the testimony of claimant by the statute makes the proof of the facts in the case more difficult, and the jury have a right to take into consideration the surrounding circumstances to a greater extent than if both parties to the suit were alive, in arriving at the proof of the disputed matters in issue.'

" Now that is true. But the real matter in issue here is as to whether such a promise was made by Mr. Adams in 1893; and, as bearing on the probability of that, you may look at all the other correspondence, and the letter of this claimant to Mr. Adams, even after this claim was filed, and ask yourselves, Is there any statement in these letters that would indicate that she had a claim for $200 against him? I must say, gentlemen, those letters are inconsistent with that claim. They are here in writing. They were viewed by the court. They are inconsistent with that claim."

We think the charge clearly intimated to the jury the opinion of the court that they ought to disallow the claim, and was erroneous. *Perrott* v. *Shearer* 17 Mich. 48; *Letts* v. *Letts,* 91 Mich. 596 (52 N. W. 54).

The judgment is reversed, and a new trial granted.

MONTGOMERY, HOOKER, McALVAY, and BROOKE, JJ., concurred.