*In re* COLBURN'S ESTATE.

MORE *v.* LUTHER.

1. JUDGMENTS—RES JUDICATA—MATTERS CONCLUDED.

On the trial of a claim in behalf of a son, against the estate of his father, for services rendered on the father's farm, in reliance upon a promise that upon the death of the parents the farm should belong to the son, testimony tending to show that the father conveyed the farm to the son affords no basis for a verdict, where it has already been determined, in a suit between the heirs of the father and the heirs of the son, that no such conveyance was made.

2. WORK AND LABOR—PARENT AND CHILD—SERVICES—CONTRACTS —COMPENSATION—EVIDENCE.

Statements by a father and mother, that their son, who was living with them and working on their farm, should have the farm at their death, constitute no evidence of an agreement that he should have the farm in payment for his services, neither do they afford evidence of a binding promise, being consistent with the thought that it was the purpose of the father and mother to give a gratuitous preference to their son at their decease.

3. SAME—IMPLIED CONTRACT.

    The relation of father and son prevents the implication of any agreement that the son should receive compensation for services rendered upon the father's farm while a member of his household.

4. SAME—EXPRESS CONTRACT — NONPERFORMANCE — IMPLIED CONTRACT.

    Where it was agreed between father and son that if the son would work on the father's farm until the death of his parents he should have the farm, but the son died before his parents, it cannot be implied that the father agreed to pay what the son's services were reasonably worth.

5. EXECUTORS AND ADMINISTRATORS—ANCILLARY ADMINISTRATION —CLAIMS—WHERE PRESENTED.

    Where ancillary administration proceedings are taken in this State, a claim arising here may be presented here, and the claimant is not obliged to present it in another State to the court having jurisdiction of the principal proceeding.

ON MOTION TO RECALL EXECUTION FOR COSTS.

EXECUTORS AND ADMINISTRATORS—ACTIONS — COSTS—ALLOWANCE AGAINST ADMINISTRATOR—STATUTORY PROVISIONS.

    The legislature did not intend, by the provisions of section 9440, 3 Comp. Laws, to take from the courts the discretion as to costs conferred by section 681, 1 Comp. Laws, and sections 9391, 11275, 3 Comp. Laws; but in cases in which the court makes no special order for costs, in the exercise of its discretion, execution issues against the executor or administrator, in accordance with the provisions of section 9440.

Error to Kent; Wolcott, J.   Submitted April 14, 1908. (Docket No. 66.)   Decided June 27, 1908.   Motion to recall execution for costs submitted. September 10, 1908. (Calendar No. 22,707.)   Denied October 5, 1908.

John E. More, administrator of the estate of Andrew K. Colburn, deceased, presented a claim against the estate of Reuben H. Colburn, deceased, for services rendered and for property wrongfully converted.   The claim was allowed by the commissioners, and George E. Luther, ancillary administrator of said estate, appealed to the circuit court.   There was judgment for claimant, and defendant brings error.   Reversed.

*Thomas P. Bradford* (*Chester W. Whitmore* and *Edmund H. Smalley*, of counsel), for appellant.

*Elvin Swarthout* (*John E. More*, of counsel), for appellee.

Reuben H. Colburn, deceased, was the father of Andrew K. Colburn, deceased. Reuben had other children, viz., two daughters somewhat younger than Andrew. Andrew was born in 1839. In 1866 Reuben, accompanied by his wife, Caroline, and his son, Andrew, moved onto a farm near the outskirts of Casnovia, Michigan. They resided there, constituting one household, from that time until the death of Andrew, which occurred in 1897. Two years thereafter, Reuben's wife, the mother of Andrew, died, and shortly thereafter Reuben went to live with one of his daughters in Illinois, where he resided until his death, which occurred February 8, 1903. Proceedings to administer his estate were instituted in Illinois. Ancillary administration was undertaken in the probate court of Kent county, Michigan. Andrew's administrator presented a claim against the estate of Reuben for the services of Andrew from 1866 until his death in 1897 and for certain personal property left by Andrew on his death and converted by Reuben. That claim was presented before the commissioners appointed in the ancillary proceedings in Kent county. The commissioners allowed the claim, and from their allowance an appeal was taken to the Kent circuit court. There it was tried by a jury who rendered a verdict in claimant's favor. The claim for services was based upon the ground that they were rendered in reliance upon the promise of Reuben that at the death of himself and wife the farm should belong to Andrew. Testimony was introduced tending to prove that Reuben actually did convey this farm to Andrew. This testimony afforded no basis for a verdict. For if this farm had been conveyed it belonged to the heirs of Andrew, and it had already been determined in a chancery proceeding instituted by those heirs against the heirs of Reuben that such

conveyance was not made. We regard that determination as conclusive and binding upon the parties interested in this litigation. The testimony also showed that Reuben shortly after the death of his wife entered into an agreement with his two daughters whereby the farm in question was deeded to them in undivided shares in consideration of their agreement to support and maintain him during the remainder of his life. Defendants offered to prove that on Andrew's death Reuben and his mother "had no other property than this farm in question and the personal property" connected therewith, "and the proceeds of that farm and that personal property were reasonably requisite and necessary for the maintenance of them during the remaining years of their life." This testimony was excluded. The issue was submitted to a jury, who were permitted to, and it is to be inferred did, give a verdict for the reasonable value of the services performed by Andrew and of certain personal property left by him at his death.

CARPENTER, J. (*after stating the facts*). 1. The first and most important question raised in this case is whether there was any testimony which warranted the claim for services to be submitted to the jury. As we have already stated, the testimony indicating that the farm had been conveyed to Andrew must be disregarded. That issue was determined against the heirs of Andrew in another suit.

Statements made by Reuben and his wife that Andrew should have the farm at their death were testified to by many witnesses. Some of these statements were made in the presence of Andrew, some of them when he was not present. Under our decisions they constitute no evidence of an agreement. They afford no evidence of a binding promise. They are consistent with the thought that it was the purpose of the father and mother to give a gratuitous preference to their son on their decease. See

153 MICH.—14.

*Decker* v. *Kanous' Estate*, 129 Mich. 146: *Rodgers* v.
*Lamb's Estate*, 137 Mich. 241. The relation of father
and son existing between Reuben and Andrew prevents
the implication of any agreement that the latter should
receive compensation for his services. As stated by
Justice COOLEY in *Mason* v. *Dunbar*, 43 Mich. 407:

"They were father and children * * * living to-
gether as a family, and receiving mutual benefit and com-
fort from their association, and from the property which
they enjoyed in common. No presumption can arise under
such circumstances that claims were to be made by either
against another for services, or for the ordinary conveniences
of life which were furnished. On the contrary, we must
presume that the parties were residing together on the
usual terms of members of one family, and not under any
contract relations."

There can be no recovery in such a case unless the
evidence proves that the services were rendered and re-
ceived under an agreement assented to by both parties
requiring compensation. *Decker* v. *Kanous' Estate*,
supra, and cases there cited.

Is there any testimony in the record warranting the in-
ference that any such agreement was made? If there is,
it is the following testimony given by witness Jacob H.
Shaw:

"The old gentleman told me that Andrew was to have
the farm when they were done with it. And the old lady
told me the same thing. He said that Andrew was to
work on the place the same as they did. This conversa-
tion was before Andrew's death. I had two or three such
conversations. I could not tell exactly, a good many
years ago. Andrew was present once. The first time we
had a conversation. they were all three together. This
talk with the old folks about the property was sometime
along in the seventies."

The foregoing statement of Reuben and his wife that
Andrew was to have the farm when they were done with
it obviously means—and this is conceded—that he was to
have it on their death. If this statement stood alone it
would, as already shown, furnish no evidence of an agree-

ment. It furnishes such evidence only because by the testimony it is connected with the statement that "Andrew was to work on the place the same as they did." If these two statements are related—and upon no other theory can an agreement be predicated upon them—the latter statement means that Andrew was to work upon the farm until the death of his father and mother. It follows that, if the foregoing testimony warrants the inference of any agreement, that agreement is this, viz., that in consideration of Andrew's work on the farm until the death of Reuben and his wife, he shall receive the farm as compensation for his services. This agreement was clearly made upon the assumption that Andrew should outlive Reuben and his wife. That assumption proved unfounded. Andrew died before either of his parents. Can it be inferred from the testimony above quoted that there was any agreement to compensate Andrew for his services rendered under these circumstances? It was held in the trial court that it could, and that the estate of Reuben was bound to pay Andrew what his services were reasonably worth. It is insisted that this conclusion was warranted by *In re Williams' Estate*, 106 Mich. 490, and *Sammon* v. *Wood*, 107 Mich. 506. In each of these cases an agreement was proved substantially like that in the case at bar, but it was also proved that the claimant rendering services fully performed his agreement and that the father for whom those services were performed refused to make the conveyance as agreed, and it was held that this refusal made his estate liable to pay the reasonable worth of the services rendered. The difference between those cases and the case at bar is manifest. There the estate was compelled to pay the reasonable worth of the services rendered as a penalty for the refusal of the decedent to perform his contract. This was a just and equitable decision. Any other conclusion would have enabled the estate of decedent to evade the obligations imposed upon it by the contract he had entered into. The principle of those cases has no application here.

Claimant never performed the contract between him and his father, and his father never failed to perform it. Upon what principle then can he recover the reasonable worth of his services ? He cannot recover upon the contract he made with his father, because he did not perform that contract. Neither can he recover upon the basis of an implied contract deducible from the rendition and acceptance of his services under the authority of *Allen* v. *McKibbin*, 5 Mich. 449. There we held that though a party cannot recover upon a non-apportionable contract which he has not performed, he may "where anything has been done from which the other party has received substantial benefit, and which he has appropriated, recover upon the quantum meruit based on that benefit, and the basis of this recovery is not the original contract, but a new implied agreement deducible from the delivery and acceptance of some valuable service or thing." That principle can have no application in this case because, as we have already shown, the law will permit no agreement to be implied from the rendition and acceptance of claimant's services.

No obligation rests upon the estate of Reuben to pay the reasonable worth of the services of Andrew unless that obligation arises from their agreement. For outside of that agreement there is no such obligation. From that agreement may it be inferred that Reuben was under obligation to pay the reasonable worth of Andrew's services in the event of his surviving Andrew ? The agreement, as already stated, is that Reuben will give Andrew his farm at the death of himself and wife if Andrew will work for him until that event occurs. According to this agreement, the compensation of Andrew is not based upon the reasonable worth of his services. Reuben and his wife might die in a few days. In that event Andrew would receive much more than the value of his services. They might live for many years, and in that event Andrew would receive less than the value of his services. For the contingency which actually occurred, viz., Andrew's

death before Reuben's, no provision whatever was made. May it be inferred that it was the intention of the parties that in such a contingency Reuben should pay Andrew's estate what his services were reasonably worth? In that event, though payment might be postponed until his death, Reuben would hold his property burdened with the obligation to pay this claim. To the extent of this claim he would be prevented from using that property for the maintenance of himself and wife during their remaining years. This would prevent his making the agreement he did make, viz., to convey the farm to his other children in consideration of their supporting and maintaining himself the remainder of his life. This would lead to very serious consequences, as shown by this case. For, as heretofore indicated, the testimony offered by contestants and excluded by the trial court would have shown that all this property was necessary for the maintenance of Reuben and his wife during their remaining years. It is scarcely necessary to say that neither Reuben nor Andrew intended that their agreement should apply in such a contingency. For the terms of that agreement clearly indicate that the right of Andrew in the farm should be subordinate to its use for the maintenance of his father and mother. I think it may also be stated that, from their agreement, it may not be inferred that either Reuben or Andrew intended, in the contingency of the former outliving the latter, the estate of the former should be fettered or burdened in any way by the claim of the latter. If they had had any such intention it is to be presumed that they would have expressed it in some way and made some equitable provision for a mutual protection of their rights. In the absence of an agreement, Andrew was entitled to no compensation for his services. The agreement provided for compensation in a certain contingency and in that contingency only. That contingency did not occur, but another and an altogether different one occurred. No principle of law or equity will permit the agreement to be applied to such a contingency, and it may not be

presumed that the parties intended it to apply. It follows from this reasoning that there was no testimony in the case tending to show an obligation on the part of the estate to compensate Andrew for his services.

2. Personal property. The claim for personal property, as I understand it, is this: That at the death of Andrew there was personal property upon the farm of two classes; (a) certain property owned by Andrew which, after his death, was sold and the proceeds used by Reuben; and (b) certain property belonging to Reuben which, on the death of himself and wife, was to become Andrew's if he worked for them until that event occurred. For this latter property there can be no recovery under the principles of this opinion. The property of Andrew is obviously subject to a different rule. For that there can be a recovery.

3. In behalf of the estate of Reuben, the point is made that the claim in question should have been presented before the court in Illinois where the principal proceedings to administer the estate were taken, and that it could not be presented in Michigan where the ancillary proceedings were taken. This point is not well taken. The claim in question arose in Michigan and was in every respect a Michigan claim. The assets of the estate in Michigan were justly subject to that claim, and it is as objectionable from a legal standpoint (see 18 Cyc. p. 1233) as from the standpoint of good sense to compel the claimant to resort to the courts of Illinois to litigate his claim which if paid must be paid from the property situated in this State.

4. Rulings relative to the admission and exclusion of testimony. Under this head appellants present many objections. Nearly all of those objections relate to rulings which arose from the claim that Andrew was entitled compensation for his services. As we have already determined that that claim must be disallowed, we see no reason for considering these objections. We think that this opinion sufficiently indicates the course to be taken upon a new trial.

Judgment reversed, and a new trial ordered.

BLAIR, MONTGOMERY, OSTRANDER, and HOOKER, JJ.,
concurred.

ON MOTION TO RECALL EXECUTION FOR COSTS.

Motion to recall execution for costs of this court against
John E. More personally and to amend the judgment
entry by adding thereto the following clause, namely :

"And that such costs be a charge against the estate of
said Andrew K. Colburn and payable out of the said es-
tate in due course of administration and not against the
individual goods and estate of said John E. More."

BLAIR, J. The principal case, in which the motion
is made, is reported ante, 206. The subject-matter of
the litigation between the parties is fully set forth in the
principal case. Prior to the decision of the case, mandamus
proceedings were instituted by appellant, administrator of
the estate of Reuben H. Colburn, to require the Kent circuit
judge to amend the judgment rendered upon the trial of the
probate appeal in the Kent circuit " so as to make the costs
payable out of the estate and not payable by said relator
personally." He also asked the respondent to stay execu-
tion against the relator individually and personally, pend-
ing the final decision in this court, upon relator giving
bond to the claimants in double the amount of the costs
taxed; each of which motions was denied by the circuit
judge. It was held by this court that the claim that re-
spondent erred in rendering judgment for costs against re-
lator personally could not be reviewed by mandamus but
could only be reviewed on error. *Luther* v. *Kent Cir-
cuit Judge*, 151 Mich. 71.

In their brief in the principal case, counsel argue at
length the point whether the circuit judge erred in enter-
ing judgment against the administrator personally, the
only difference between the arguments then presented and
the arguments now presented being that each counsel now
strenuously insists that the position taken by his adversary
was correct and adopts the adversary's brief as his brief

upon this motion. The question was not passed upon in the principal case, for the reason that the judgment was reversed and a new trial granted.

We are of the opinion that the legislature did not intend, by the provisions of section 9440, 3 Comp. Laws, to take from the courts the discretion as to costs conferred by section 681, 1 Comp. Laws, and sections 9391, 11275, 3 Comp. Laws. *Van Wert* v. *Chidester*, 31 Mich. 207; *Cheever* v. *North*, 106 Mich. 390; *Brilliant* v. *Wayne Circuit Judges*, 110 Mich. 68; *Dodge* v. *Stanton*, 12 Mich. 408.

In cases, however, where the court makes no special order as to costs, in the exercise of its discretion, execution issues against the executor or administrator, in accordance with the provisions of section 9440.

We, therefore, hold that the execution for costs of this court was properly issued against relator, and we see no sufficient reason for amending the judgment entry and recalling the execution.

Application denied.

MONTGOMERY, OSTRANDER, HOOKER, and MOORE, JJ., concurred.