McINERNEY v. DETROIT TRUST CO.

1. EXECUTORS AND ADMINISTRATORS—CLAIMS FOR SERVICES AGAINST
ESTATES OF DECEASED RELATIVES.
     Plaintiff who rendered personal service to stricken uncle in
     grandmother's home for 9 months when he was 14 years of
     age must clearly establish that contractual relations existed
     with uncle in order to recover from uncle's estate some 23
     years after rendition of such services.

2. CONTRACTS—ESSENTIAL ELEMENTS.
     The essential elements of a contract are parties competent to
     contract, a proper subject matter, a legal consideration, mu-
     tuality of agreement and mutuality of obligation.

3. SAME—DEFINITION.
     A contract is an agreement, upon a sufficient consideration, to
     do or not to do a particular thing.

4. SAME—CLASSES.
     Contracts are divided into express contracts and implied con-
     tracts.

5. SAME—EXPRESS CONTRACTS.
     An express contract is one in which the terms were openly
     uttered and avowed at the time of the making.

6. EXECUTORS AND ADMINISTRATORS—SERVICES FOR RELATIVE—CON-
TRACTS—EVIDENCE.
     In proceedings to establish claim against estate of deceased
     uncle for services rendered some 23 years prior when claimant
     was but 14 years old, record held, to disclose no evidence that
     an express contract was made between the parties nor agree-
     ment between the parties before or at the time the services
     were rendered.

7. SAME—STALE CLAIMS.
     Stale claims should not be encouraged by the courts and it is
     the duty of the courts to protect decedent's estates from them.

8. Contracts — Services — Family Relation — Presumption of Gratuity.

When the family relation exists, much which is done for and furnished to one member by another or others is presumed to be gratuitously done or furnished and the existence of the relation and presumption arising therefrom negatives the existence of an implied contract to pay for what is accepted; hence to support a recovery therefor, it is necessary clearly to show an express contract.

9. Executors and Administrators — Claims Against Estates — Evidence.

Particularly strong and convincing proof is required, where the claim against the estate of a deceased person is stale, or where the services extended over a considerable period and no demand for compensation was ever made during decedent's lifetime, before a court may leave it to a jury to speculate as to the existence of contract necessary to support such claim.

10. Contracts—Implied—Classes—Purposes.

There are two kinds of implied contracts: one implied in fact, and the other implied in law; the first does not exist unless the minds of the parties meet by reason of word or conduct and the second is *quasi* or constructive, does not require a meeting of the minds, but is imposed by fiction of law to enable justice to be accomplished even in case no contract was intended.

11. Same—Implied Promise—Spontaneous Service—Act of Kindness.

A contract connection is not established where there is performance of a spontaneous service as an act of kindness and no request, or where circumstances account for the transaction on some ground more probable than that of a promise of recompense, no promise being implied in such case.

12. Evidence—Contracts.

Evidence to establish a contract must show something more than a mere possibility, guess or conjecture as a court has to decide upon the evidence and not guess in default of it.

13. Parent and Child—Compensation for Child's Services—Presumptions.

Any compensation for services rendered by a 14-year old child presumptively belongs to his parents.

14. Executors and Administrators—Admissions of Deceased—Contracts—Services of Minor—Finding of Court.

In proceeding against estate of deceased uncle for services rendered by claimant as a 14-year old boy in the home of his grandmother, where the testimony consists of admissions by deceased and discloses no contract made with plaintiff, nor account kept nor charges ever made, nor that services were rendered uncle in reliance upon receiving pay therefor, finding of trial court that estate was not liable *held*, not error.

15. Evidence—Admissions of a Deceased Person.

Proof of admissions of a deceased person should be received with caution and subjected to careful scrutiny and without corroboration are of little value.

16. Appeal and Error—Weight of Evidence—Admissions.

On appeal from finding of trial court for defendant estate as to claim presented by claimant for services he had rendered when a 14-year old boy for his uncle some 23 years before, Supreme Court is not called upon to pass upon the weight of admissions alleged to have been made by decedent in his lifetime but even if given all the weight to which they could be entitled, under any circumstances, such admissions *held*, insufficient to establish a contract entitling plaintiff to recover.

Appeal from Wayne; Dehnke (Herman), J., presiding. Submitted January 7, 1937. (Docket No. 59, Calendar No. 39,187.) Decided March 1, 1937.

In the matter of the estate of John J. Faltis, deceased. Leo J. McInerney presented his claim in probate court for services rendered deceased. Detroit Trust Company, administrator, objected thereto. Claim disallowed by commissioners on claims. Plaintiff appealed to circuit court. Judgment for defendant. Plaintiff appeals. Affirmed.

*Neal E. Fitzgerald,* for plaintiff.

*Harry Cohen (John Sklar,* of counsel), for defendant.

Potter, J. Plaintiff presented a claim against the estate of John J. Faltis, deceased, for 276 days' services, claimed to have been rendered from May 1, 1912, to February 1, 1913, at $5 a day, a total of $1,380. This claim was heard before commissioners on claims who, November 26, 1935, disallowed it. Plaintiff appealed to the circuit court where the claim was again disallowed. The case comes here on appeal in the nature of writ of error.

No written objections to the claim were filed in the circuit court. Counsel for contestant claimed there was no thought of payment on the part of the parties at the time the services were rendered; plaintiff was not a proper party, the services were rendered when he was a child 14 years of age; the benefit of the statute of limitations, and other things. At the conclusion of plaintiff's testimony, the trial court found for the estate.

The record shows that John Faltis, when taken sick, went to the home of his mother, and plaintiff went over to his grandmother's house and assisted her in taking care of him. Whether plaintiff was paid by his grandmother or not for the services rendered does not appear. John Faltis and his mother comprised the household. A witness testified that after decedent was up around, he was down at Notre Dame, where plaintiff was attending school, and there said he intended to remember plaintiff for his services in his will. There is no testimony he mentioned any contractual relations between him and plaintiff. Plaintiff's wife testified decedent said to her prior to her marriage, "You marry Leo and I am going to see you are taken care of." This falls far short of proving any contract between the parties whereby deceased was to pay for the services rendered by this child in assisting his grandmother

in taking care of him. Another witness says Mr. Faltis said he would remember Leo for the services rendered. Another said Mr. Faltis said he would make provision in his will. Deceased at one time made a will which gave plaintiff $1,000. This will was revoked. So far as the record here is involved, decedent had a right to revoke it.

In order for plaintiff to recover, he must establish contractual relations with the deceased.

The essential elements of a contract are parties competent to contract, a proper subject matter, a legal consideration, mutuality of agreement and mutuality of obligation.

Blackstone says a contract is an agreement, upon a sufficient consideration, to do or not to do a particular thing. 2 Blackstone's Commentaries, p. 442.

Contracts are divided into express contracts and implied contracts. Plaintiff claims there was an express contract entered into between him and the deceased.

An express contract may be defined as one in which the terms were openly uttered and avowed at the time of the making. 2 Blackstone's Commentaries, p. 442; 1 Parsons on Contracts (9th Ed.), p. 4; 2 Kent's Commentaries (14th Ed.), p. 450.

"An express contract is one where the intention of the parties and the terms of the agreement are declared or expressed by the parties, in writing or orally, at the time it is entered into." 13 C. J. p. 240.

There is no evidence before us that an express contract was made between the parties, no proof of any agreement made between them before or at the time the services were rendered.

Plaintiff was 14 years old. He says he entered Notre Dame Preparatory School in January, 1913,

and, if so, he was probably not caring for his uncle in Detroit at the same time.

"This class of claims should not be encouraged by the courts. Indeed, it is the duty of courts to protect decedent estates from them." *Wright* v. *Senn's Estate,* 85 Mich. 191.

" 'We have had frequent occasion to deal with cases of this kind, and it has often been said that it is the duty of courts to protect decedents' estates from claims of the character of this.' *Decker* v. *Kanous' Estate,* 129 Mich. 146." *Hartle* v. *Keefer's Estate,* 260 Mich. 188.

"When the family relation exists, much which is done for and furnished to a member of the family by another or by other members is presumed to be gratuitously done or furnished. It is the relation and the presumption arising therefrom, which is held to negative the existence of an implied contract to pay for what is accepted." *Weessies* v. *Van Dyke's Estate,* 159 Mich. 180.

See, also, 18 Cyc. p. 412; 24 C. J. p. 281.

The most that may be said of the testimony is that it has a tendency to show admissions upon the part of decedent in his lifetime, made long after the services were rendered, that he had an intention to reward plaintiff by making provision for him in his will. But this intention was testamentary in character, subject to revocation, and there was no outstanding will at the time of decedent's death giving plaintiff anything.

"The presumption is that services of the nature claimed, rendered in the family to a relative, are gratuitous. * * * To establish this claim of an implied contract for extra care and attendance, the service must be proven, and there must be testimony tending to show an agreement, assented to by both

parties, binding in law and requiring compensation. The import of the testimony relied on is gratuitous expressions of intention to compensate Peter and his family for this kindness during the years the father lived with them. This case is within the rules announced in *Decker* v. *Kanous' Estate,* 129 Mich. 146; *Luizzi* v. *Brady's Estate,* 140 Mich. 73; *In re Colburn's Estate,* 153 Mich. 206 (18 L. R. A. [N. S.] 149, 126 Am. St. Rep. 479), and cases there cited." *In re DeHaan's Estate,* 169 Mich. 146.

In *Vandecar* v. *Nowland's Estate,* 188 Mich. 429, there was abundant testimony of statements made by the deceased in his lifetime that he intended the claimant and his wife, or both, should have the farm at his death. The court said:

"A careful consideration of which (the testimony) constrains us to agree with the trial court that claimant has not, under the circumstances of this case, overcome the presumption that such services rendered by a member of deceased's family or a closely associated relative are gratuitous where no express contract is shown, nor against such presumption established an implied contract, and that what is shown to have been said by deceased as to the disposition of this property goes no further than a declaration of testamentary intent.

"It is well-settled law that:

" 'Particularly strong and convincing proof is required where the claim is stale, or where the services extended over a considerable period and no demand for compensation was ever made during the decedent's lifetime.' * * *

"This is of that class of claims in which it is held the duty of the court to require clear and substantial proof before leaving it to a jury to speculate as to the existence of the contract necessary to support them."

"The courts regard with suspicion and disfavor claims brought against a decedent's estate for per-

sonal services rendered by relatives, especially where the latter are members of his immediate family or household, as the presumption is that such services, between persons occupying such relations, are intended to be gratuitous." *Fletcher* v. *Fletcher*, 214 Mich. 12.

"The law will not associate with the discharge of a purely filial duty an implied obligation to pay for the same. To support a recovery therefor an express contract must be clearly shown." *Wright* v. *Senn's Estate, supra.*

"Services rendered by a member of a household are presumed to be gratuitous and no recovery can be had therefor in the absence of an express agreement to pay for them; and the testimony in support of such an agreement must be so clear and explicit as to leave nothing for conjecture." *Krukowski* v. *Paluszewski's Estate,* 240 Mich. 291.

"There are two kinds of implied contracts: one implied in fact, and the other implied in law. The first does not exist unless the minds of the parties meet, by reason of words or conduct. The second is *quasi* or constructive, and does not require a meeting of minds, but is imposed by fiction of law, to enable justice to be accomplished, even in case no contract was intended." *Cascaden* v. *Magryta,* 247 Mich. 267.

"Where there is a spontaneous service as an act of kindness and no request, or where the circumstances account for the transaction on some ground *more probable* than that of a promise of recompense, no promise will be implied. The contract connection is not established." *Woods* v. *Ayres,* 39 Mich. 345 (33 Am. Rep. 396).

Evidence to establish a contract must show something more than a mere possibility, guess or conjecture. The court is to decide upon the evidence and

not guess in default of evidence. *Marquette County* v. *Ward,* 50 Mich. 174.

The trial court passed upon the weight of the testimony. *Hartle* v. *Keefer's Estate, supra.*

In this case, the trial court said:

"I think that if this case had been tried before a jury it would have been the duty of the court to direct a verdict of no cause for action with the defendant, because the most that can be said of the testimony offered is that he had a testamentary intention of some form or other to do something for the claimant, but it did not amount to an acknowledgment that he was legally indebted to the claimant. Quite a number of these cases recite testimony of a similar nature, in which the deceased expressed the appreciation for what some other person had at one time or another done for him and said that he expected or intended to do something for that person before he died, or by way of a bequest in the will. The Supreme Court has quite uniformly held that if it stops there, there isn't any question to be submitted to the jury, but it must be decided on a matter of law. I think on the whole this is such a case. To raise a question of fact it is necessary as I say, to show some statement from which it may fairly be deduced that the person who rendered the service expected at the time to be paid for it and wouldn't have rendered the service except for that expectation, and that the person who received the benefit of those services did not suppose that they were being gratuitously granted, but in the expectation of being paid for them."

Presumptively, any compensation for services rendered by plaintiff at 14 years of age belonged to his parents. There is no proof any contract with decedent was entered into, any account was ever kept, any charges ever made, or that plaintiff relied upon the fact his uncle owed him for services. The parties were on friendly terms and it may be the plain-

tiff expected his uncle at his death would reward him. There is no proof plaintiff rendered the services in reliance upon receiving pay therefor. All the testimony was of alleged admissions of decedent.

In *Wales* v. *Newbould,* 9 Mich. 45, Mr. Justice Christiancy said:

"No species of testimony is more easily fabricated than that of admissions or declarations like those testified to by Davidson; and the value of such evidence—especially when we are compelled to judge of it by written deposition, without seeing or hearing the witness himself—must always depend much upon the nature and circumstances of the case, and much also upon the facilities which it affords for contradiction, if false. Here the party whose declarations purport to be given was dead before the testimony was taken, and can therefore neither contradict nor explain, nor afford to others any means of explanation or contradiction, however easily her knowledge of the facts might have enabled her to do so, if alive. This consideration, as it takes away much of the substantial benefit of a cross-examination, should make us still more cautious of giving implicit credit to the testimony."

After analyzing the language and circumstances under which the alleged admissions were claimed to have been made, he concluded:

"I do not mean to say that any of the features of this testimony which I have noticed, or all of them combined, are at all conclusive of the question of their truth or falsehood. I may have attributed to them too much significance. But I have endeavored to present them exactly as they have operated upon my own mind. The testimony *may* all be true. But it cannot be denied that it has many of the earmarks which we should expect to find in testimony fabricated for the occasion."

These admissions not only fail to show any contract or meeting of the minds of the parties, but show a set of circumstances which, in the opinion of the trial court, rebutted the presumption of contract. They are concededly the most unreliable · proof known to the law. Proof of admissions should be received with caution and subjected to careful scrutiny for reasons stated in *Wild* v. *Wild*, 266 Mich. 570; *Hope* v. *Detroit Trust Co.*, 275 Mich. 213; *Wales* v. *Newbould, supra*. As said in 2 Jones, Commentaries on Evidence, § 295, expressly approved in *Wild* v. *Wild, supra*, and *Hope* v. *Detroit Trust Co., supra*.

"Where the admission is that of ·one deceased the caution should deepen into suspicion for reasons that are obvious and without corroboration is of little value."

We are not called upon to pass upon the weight of the admissions alleged to have been made in his life-time by the decedent. Giving to these admissions all the weight to which they could under any circumstances be entitled, they fall far short of showing such a contract as entitled plaintiff to recover. *Kratz* v. *Storz' Estate*, 257 Mich. 346; *Robinson* v. *McAfee Estate*, 59 Mich. 375.

Judgment affirmed, with costs.

FEAD, C. J., and NORTH, WIEST, BUTZEL, BUSHNELL, SHARPE, and CHANDLER, JJ., concurred.