*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

REGENCY AT SHELBY TOWNSHIP,

Plaintiff-Appellant,

v

KATHLEEN NAEYAERT,

Defendant-Appellee.

UNPUBLISHED
October 09, 2024
9:24 AM

No. 367084
St. Clair Circuit Court
LC No. 22-000713-CZ

Before: CAMERON, P.J., and JANSEN and SWARTZLE, JJ.

PER CURIAM.

Plaintiff, Regency at Shelby Township, appeals as of right the trial court's order denying its motion for summary disposition under MCR 2.116(C)(10) and granting defendant's, Kathleen Naeyaert's, countermotion for summary disposition under MCR 2.116(I)(2). We affirm.

## I. BACKGROUND FACTS AND PROCEDURAL HISTORY

Defendant, now 53 years old, was struck and severely injured by an automobile on October 27, 1973 when she was two years old. She became paraplegic and wheelchair-bound due to significant spinal injuries she incurred from the accident. In the summer of 2019, defendant was hospitalized for upper extremity weakness and she was eventually discharged with the recommendation she continue treatment in an inpatient rehabilitation facility. She was later admitted to plaintiff's facility for such treatment.

Defendant signed an "Admission Agreement" in which she agreed to pay for any services not covered by insurance. Plaintiff issued a number of invoices to defendant's no-fault insurer, AAA of Michigan (AAA), seeking payment for defendant's services. AAA paid a minimal portion of these invoices. AAA sent plaintiff several explanations of benefits (EOBs) which included the following statement: "If this Explanation of Benefits indicates partial payment or no payment as it relates to this invoice, any unpaid portions of this bill have been denied. Please refer to the above explanation for further details." Defendant was eventually discharged from plaintiff's facility in early 2020.

-1-

In April of 2022, plaintiff filed the complaint in this case alleging three counts of breach of contract. Plaintiff later moved for summary disposition under MCR 2.116(C)(10), contending that, pursuant to the Admission Agreement, there was no genuine question of fact that defendant breached the terms of the Admission Agreement. Defendant responded, arguing that this case arose under Michigan's no-fault act, MCL 500.3101, *et seq.*, and that it could not be pursued as a breach-of-contract action. Furthermore, plaintiff's claim was untimely under the no-fault act because they were pursued more than one year from the date of service. Defendant moved for summary disposition under MCR 2.116(I)(2) on the basis of these arguments. Plaintiff contended that even if the claim was subject to the time limitations of the no-fault act, its claim was properly tolled under MCL 500.3145(3). Plaintiff's claim was dismissed after the trial court concluded that the claim arose under the no-fault act and that it was untimely. This appeal followed.

## II. STANDARD OF REVIEW

Plaintiff's appeal challenges the trial court's denial of its motion for summary disposition and grant of summary disposition to defendant. This Court reviews a trial court's grant or denial of summary disposition de novo. *Sharper Image Corp v Dep't of Treasury*, 216 Mich App 698, 701; 550 NW2d 596 (1996).

Plaintiff moved for summary disposition under MCR 2.116(C)(10).

> A motion under MCR 2.116(C)(10) tests the factual sufficiency of the complaint. In evaluating a motion for summary disposition brought under this subsection, a trial court considers affidavits, pleadings, depositions, admissions, and other evidence submitted by the parties, MCR 2.116(G)(5), in the light most favorable to the party opposing the motion. Where the proffered evidence fails to establish a genuine issue regarding any material fact, the moving party is entitled to judgment as a matter of law. [*Maiden v Rozwood*, 461 Mich 109, 120; 597 NW2d 817 (1999).]

But, the issue below was not whether plaintiff's complaint was factually sufficient. Rather, the relevant issue became whether plaintiff could pursue this claim as a breach-of-contract action, or whether the claim was controlled by the no-fault act. The distinction between these two types of causes of action is a legal, rather than factual question. This Court is "not bound by the labels that parties attach to their claims." *Pugno v Blue Harvest Farms LLC*, 326 Mich App 1, 13; 930 NW2d 393 (2018) (quotation marks and citation omitted). As such, we review plaintiff's motion under the purview of MCR 2.116(C)(8).

> A motion under MCR 2.116(C)(8) tests the legal sufficiency of the complaint. All well-pleaded factual allegations are accepted as true and construed in a light most favorable to the nonmovant. A motion under MCR 2.116(C)(8) may be granted only where the claims alleged are so clearly unenforceable as a matter of law that no factual development could possibly justify recovery. When deciding a motion brought under this section, a court considers only the pleadings. [*Maiden*, 461 Mich at 119-120 (quotation marks and citations omitted).]

Defendant, meanwhile, moved for summary disposition under MCR 2.116(I)(2). "Summary disposition is properly granted to the opposing party if it appears to the court that that party, rather than the moving party, is entitled to judgment." *Sharper Image Corp*, 216 Mich App at 701. Thus, in addition to determining whether the trial court properly denied plaintiff's motion for summary disposition, this Court must also consider whether summary disposition was properly granted in defendant's favor.

Finally, this case involves the interpretation of statutes and court rules, which this Court reviews de novo. *Covenant Med Ctr, Inc v State Farm Mut Auto Ins Co*, 500 Mich 191, 199; 895 NW2d 490 (2017), superseded by statute as stated in *Spine Specialists of Mich, PC v Falls Lake Nat'l Ins Co*, ___ Mich App ___, ___; ___ NW3d ___ (2024) (Docket No. 364103); slip op at 4.

> The role of this Court in interpreting statutory language is to ascertain the legislative intent that may reasonably be inferred from the words in a statute. The focus of our analysis must be the statute's express language, which offers the most reliable evidence of the Legislature's intent. When the statutory language is clear and unambiguous, judicial construction is not permitted and the statute is enforced as written. A court may read nothing into an unambiguous statute that is not within the manifest intent of the Legislature as derived from the words of the statute itself. [*Covenant Med Ctr*, 500 Mich at 199. (quotation marks, citations, and alteration omitted).]

## III. EXCLUSIVE REMEDY

Plaintiff argues the trial court wrongly determined that the no-fault act controlled this case, alleging it could pursue this case under a contractual-liability theory. According to plaintiff, the no-fault act was not intended to be the exclusive remedy in these circumstances. We disagree.

Under the no-fault act, "an insurer is liable to pay benefits for accidental bodily injury arising out of the ownership, operation, maintenance or use of a motor vehicle as a motor vehicle[.]" MCL 500.3105(1). It is undisputed that defendant's injuries arose from the 1973 automobile accident, and were therefore recoverable under the no-fault act. The relevant question, however, is whether plaintiff could seek reimbursement under a contractual-liability theory, or whether it was limited to recovery under the no-fault act.

We already decided this issue in *Auto-Owners Ins Co v Compass Healthcare PLC*, 326 Mich App 595; 928 NW2d 726 (2018). In *Compass Healthcare*, the medical provider for an insured who was injured in an automobile accident billed the insured's no-fault insurance company for their care. *Id*. at 600. The insurance company paid some, but not all, of the bill. *Id*. Thereafter, the medical provider sought the balance from the insured. *Id*. The insurance company challenged this action, arguing that the medical provider should have sought payment from it, rather than the insured. *Id*. at 601.

The issue in *Compass Healthcare* was two-fold. The first issue was whether the insurance company or the insured was the appropriate party from which to collect payment. *Id*. at 608. Relying on our Supreme Court's decision in *Covenant Med Ctr*, 500 Mich at 196, 217, we framed the issue as a dispute over the reasonableness of the charges. *Id*. at 609. We then affirmed the

trial court's conclusion that "[the medical provider] had a legal right to seek payment directly from [the insured] under the provisions of the No-Fault Act [sic]." *Compass Healthcare*, 326 Mich App at 608 (quotation marks omitted). We further agreed with the trial court that "[t]he only effect of *Covenant* was to place the dispute over the reasonableness of the charges between a provider and a patient-insured, rather than between a provider and an insurer. It did not alter the method of disputing the reasonableness of the amount paid." *Compass Healthcare*, 326 Mich App at 610 (quotation marks and emphasis omitted, alteration in *Compass Healthcare*). In other words, a medical provider could challenge the failure to fully satisfy a medical bill, but it was the insured, and not the insurance company, against whom the provider needed to bring the challenge.

The second issue in *Compass Healthcare* was the proper framework under which to resolve these issues—specifically, whether a cause of action should be pursued under the no-fault act, or whether a medical provider could seek relief under a contractual-liability theory. *Id*. at 611. In answering this question, we held that "[t]o conclude that [a medical provider] could prevail on the theory of an implied contract is contrary to the purpose of the no-fault act, and its implications would allow medical providers to circumvent the protective nature of the act." *Id*. at 611. Thus, "any claim [a medical provider] may have against [an insured] would be for payment of services rendered to an injured person 'covered by personal protection insurance' under the no-fault act." *Id*., quoting MCL 500.3157.

Our holding as to the second issue informs the question in this case. Under *Compass Healthcare*, plaintiff cannot pursue reimbursement under a contractual-liability theory. The trial court reached the correct conclusion under *Compass Healthcare* by denying plaintiff's motion for summary disposition and concluding plaintiff's claim was limited to the no-fault act. We affirm on this basis.

That said, plaintiff attempts to distinguish this case from *Compass Healthcare*, contending that this case should have the "opposite result." Plaintiff first asserts that this case does not involve a "balance-billing" situation,[1] but rather an attempt by plaintiff to recoup the entire balance owed. But, this is a distinction without a difference. "The no-fault insurance act was a radical restructuring of the rights and liabilities of motorists." *Tebo v Havlik*, 418 Mich 350, 366; 343 NW2d 181 (1984). "Through comprehensive action, the Legislature sought to accomplish the goal of providing an equitable and prompt method of redressing injuries in a way which made the mandatory insurance coverage affordable to all motorists." *Id*. Plaintiff's suggestion that contractual remedies are not available for balance-billing situations, but are available for circumstances where the provider seeks the entirety of a bill is antithetical to this purpose.

Plaintiff also argues that *Compass Healthcare* involved the reasonableness of the charges, while this case involved the recoupment of the entire balance. This argument again misses the mark. The discussion in *Compass Healthcare* concerning the reasonableness of the charges involved the issue of whether a medical provider could seek payment directly from an insured,

---

[1] "The phrase 'balance billing' refers to a 'healthcare provider's practice of requiring a patient or other responsible party to pay any charges remaining after insurance and other payments and allowances have been applied to the total amount due for the provider's services.' " *Compass Healthcare*, 326 Mich App at 601 n 4, quoting *Black's Law Dictionary* (10th ed).

rather than the no-fault insurer. *Compass Healthcare*, 326 Mich App at 608. This case does not involve a question of the appropriate parties to the litigation. Indeed, plaintiff correctly sought reimbursement from defendant, and not her no-fault insurer. Therefore, the question of reasonableness is immaterial, because this is simply not at issue.

Plaintiff next advances a perfunctory argument that *Compass Healthcare* does not control because this case involves an express, rather than implied contract. Plaintiff has failed to explain why this distinction makes a difference. It is a bedrock principle of contract law that implied contracts, like express contracts, are binding on the parties. See, e.g., *McInerney v Detroit Trust Co*, 279 Mich 42, 48; 271 NW 545 (1937).[2] The binding nature of the contract notwithstanding, the fact remains that plaintiff's recoupment under the contract is limited to the methods and restrictions established by the no-fault act.[3]

In sum, plaintiff is entitled to pursue defendant for reimbursement of her rehabilitative care. But, because defendant's injuries "[arose] out of the ownership, operation, maintenance or use of a motor vehicle as a motor vehicle," MCL 500.3105(1), plaintiff's recourse is limited to the no-fault act.

## IV. TOLLING

Plaintiff argues that, even assuming this case falls under the purview of the no-fault act, its claim was timely because AAA never formally denied its request for payment and therefore the tolling provision of MCL 500.3145(3) applies. We disagree.

MCL 500.3145(2) and (3) state:

(2) Subject to subsection (3), if the notice has been given or a payment has been made, the action may be commenced at any time within 1 year after the most recent allowable expense, work loss, or survivor's loss has been incurred. However, the claimant may not recover benefits for any portion of the loss incurred more than 1 year before the date on which the action was commenced.

(3) A period of limitations applicable under subsection (2) to the commencement of an action and the recovery of benefits is tolled from the date of a specific claim for payment of the benefits until the date the insurer formally denies

---

[2] We further note that *Compass Healthcare* did not reach the question of an express contract because that case did not involve one. It is nonsensical that *Compass Healthcare* would have addressed a type of contact that was not at issue.

[3] Plaintiff also attempts to distinguish this case from *Compass Healthcare* by pointing to the federal district court case, *Southeast Mich Surgical Hosp, LLC v Little*, opinion of the United States District Court for the Eastern District of Michigan, issued December 28, 2020 (Case No. 18-13895), p 2. However, we disagree with the conclusions reached in this nonbinding opinion. See *Charter Twp of Ypsilanti v Dahabra*, 338 Mich App 287, 306 n 14; 979 NW2d 725 (2021).

the claim. This subsection does not apply if the person claiming the benefits fails to pursue the claim with reasonable diligence.

Subsection (2) of the statute is known as the "one-year-back rule," and "is designed to limit the amount of benefits recoverable under the no-fault act to those losses occurring no more than one year before an action is brought." *Wenkel v Farm Bureau Gen Ins Co of Mich*, 344 Mich App 376, 384; 1 NW3d 353 (2022), citing *Joseph v Auto Club Ins Ass'n*, 491 Mich 200, 203; 815 NW2d 412 (2012). But, the one-year-back rule is subject to subsection (3), because the one-year time line is tolled "until the date the insurer formally denies the claim." MCL 500.3145(3).

Plaintiff's claim was filed more than one year from the last allowable expense as required by the one-year-back rule of subsection (2). Therefore, the issue is whether the tolling provision of subsection (3) applies so as to make plaintiff's claim timely. Plaintiff believes the time period remained tolled because AAA never formally denied the claim. Defendant, meanwhile, contends the EOBs constituted formal denials, and, therefore, the one-year period resumed once the EOBs were issued.

AAA's EOBs contained the following language: "If this Explanation of Benefits indicates partial payment or no payment as it relates to this invoice, any unpaid portions of this bill have been denied. Please refer to the above explanation for further details." According to plaintiff, this notation in AAA's EOBs was simply "boilerplate" language and did not constitute a formal denial under the statute.

Plaintiff points to this Court's opinion in *Encompass Healthcare, PLLC v Citizens Ins Co*, 344 Mich App 248; 998 NW2d 751 (2022), in support of its position. In that case, an insured was injured in an automobile accident and later assigned his rights to the plaintiff. *Id*. at 251. The plaintiff sought payment for the insured's care from the defendant, which paid a portion of the claim. *Id*. The defendant issued several "explanations of review" (EORs), most of which stated:

> This bill has been evaluated against the prevailing billing practices for healthcare providers within your geographic area. The reimbursement rate may therefore be different than the amount billed.
>
> Please be advised that this bill may have been adjusted pursuant to the provisions of any applicable statute or any applicable policy of insurance. Based upon the adjustment of the bill pursuant to any applicable statute or any applicable policy of insurance, the payment for this bill may different that [sic] the amount billed. [*Id*. at 263 (correction in *Encompass Healthcare*).]

The plaintiff filed suit and the defendant moved for summary disposition, arguing the EORs constituted formal denials, and therefore the claim was untimely under MCL 500.3145(2). *Encompass Healthcare*, 344 Mich App at 262. The trial court partially granted the motion for summary disposition, and the plaintiff appealed. *Id*. at 253.

On appeal, this Court discussed the nature of a "formal denial," explaining that "a formal denial ends tolling (and commences the running of the one-year-back rule) because it unequivocally impresses upon the insured that the extraordinary step of pursuing relief in court must be taken." *Id*. at 260 (quotation marks, citation, and alteration omitted). Further, "while a

formal denial need not be in writing, it must be 'sufficiently direct.' " *Id.* at 261 (citation omitted). In other words:

> A denial of liability need not be in writing to be formal, but it must be explicit. Although the best formal notice is a writing, notice may be sufficiently direct to qualify as formal without being put into writing. Accordingly, under this state's jurisprudence, a "formal denial" must be explicit and direct. [*Id.*, quoting *McNeel v Farm Bureau Gen Ins Co of Mich*, 289 Mich App 76, 111; 795 NW2d 205 (2010) (K. F. KELLY, J., dissenting).]

Under these standards, this Court evaluated the EORs at issue, and determined they were not sufficiently explicit and direct to constitute formal denials. *Encompass Healthcare*, 344 Mich App at 262. Specifically, "[t]he EORs included no language clearly stating that the claims were denied, at least not with the finality and clarity required to end the tolling period." *Id.* We further determined that, "[g]iven the nature of the comments requesting additional information, [the plaintiff] could not reasonably infer that the EORs were denials." *Id.* "For EORs lacking a request for more information, [the defendant] argues that [the plaintiff] should have assumed that [the defendant] had issued a formal and final denial. But no information ever explicitly indicated that the insurer was denying all liability in excess of what it had paid." *Id.* (quotation marks, citation, emphasis, and alterations omitted). In our view,

> This general disclaimer was merely included as boilerplate and did not communicate to [the plaintiff] an explicit and unequivocal denial of benefits. Given the generality of these statements, like that of the information relating to the amounts approved and any reductions made, [the defendant's] EORs simply lacked the clarity to unequivocally convey a need for [the plaintiff] to seek redress in court and to constitute formal denials under MCL 500.3145(3). [*Encompass Healthcare*, 344 Mich App at 263.]

Unlike the EORs in *Encompass Healthcare*, the EOBs in this case unequivocally stated that "any unpaid portions of this bill have been denied." The language of the EOBs was unequivocal and direct. They left no doubt that any "unpaid portion[]" of the claim was a definitive denial. As such, we affirm the trial court's determination that plaintiff's claim was—for the most part—untimely, because plaintiff failed to challenge the denials within the time period prescribed by the one-year-back rule.

Even so, plaintiff seeks to create ambiguity by asserting that the language in the EOBs was simply "boilerplate" language that was used in all the EOBs at issue. Therefore, this language lacked all relevant meaning. Boilerplate is "[r]eady-made or all-purpose language that will fit in a variety of documents." *Black's Law Dictionary* (12th ed). Even if the referenced language is considered "boilerplate," that does not mean the words do not effect their intended meaning. The language here repeatedly and unequivocally stated that nonpayment or partial payment constituted a denial. The meaning of this language is not diminished by being part of a standard form.

Plaintiff also believes that defendant's assertions during oral argument show that AAA was seeking "more information" about plaintiff's claim, and, therefore, AAA had not formally denied the claim. This argument is nonsensical. The cited portion of the transcript is a statement by

defendant's attorney—not an attorney from AAA. While there was a lack of clarity whether this attorney also represented AAA, AAA was not part of the proceedings below, and any statements by this attorney cannot be construed as speaking on AAA's behalf. Moreover, the referenced statement was to communicate the possible reason for AAA's denial, not to suggest that AAA might later grant the claim once it received more information.

Affirmed.

/s/ Thomas C. Cameron
/s/ Kathleen Jansen
/s/ Brock A. Swartzle