*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

MARY SIMMONS, Individually and on Behalf of
All Others Similarly Situated,

      Plaintiff-Appellant,

v

NORTHERN MICHIGAN UNIVERSITY BOARD
OF TRUSTEES,

      Defendant-Appellee.

UNPUBLISHED
December 04, 2024
12:22 PM

No. 358204
Court of Claims
LC No. 20-000083-MK

Before: BORRELLO, P.J., and N. P. HOOD and YOUNG, JJ.

PER CURIAM.

Plaintiff, Mary Simmons, appeals by right the trial court's order granting summary disposition under MCR 2.116(C)(10) to defendant, Northern Michigan University Board of Trustees (NMU), on Simmons's claims for breach of contract and unjust enrichment related to remote teaching and campus closure during the COVID-19 pandemic. For the reasons set forth in this opinion, we affirm.

## I. BACKGROUND

Simmons, a student at Northern Michigan University (NMU) during the Spring 2020 semester, initiated a legal action in the Court of Claims seeking partial refunds for tuition, fees, and room-and-board payments. She argued that NMU's responses to the COVID-19 pandemic deprived her of the full educational experience and benefits she had paid for. In her complaint, Simmons presented claims based on breach of both express and implied contracts, as well as a claim for unjust enrichment. Specifically, Simmons contended that NMU breached its contractual obligations in multiple ways: first, by shifting from in-person classes to online instruction, which she believed did not warrant the same tuition costs; second, by not issuing appropriate prorated refunds for room-and-board payments after students were required to vacate on-campus housing due to the pandemic; and third, by closing various facilities and failing to offer a complete range of on-campus services in return for the fees she had already paid.

Additionally, Simmons raised unjust enrichment claims as an alternative, arguing that NMU benefited unfairly from the situation. However, the trial court granted NMU's motion for summary disposition under MCR 2.116(C)(10), effectively dismissing all of Simmons's claims. Following this ruling, Simmons pursued an appeal to challenge the court's decision.

## II. STANDARD OF REVIEW

This Court reviews de novo a trial court's decision on a motion for summary disposition. *Zwiker v Lake Superior State Univ*, 340 Mich App 448, 473; 986 NW2d 427 (2022). Summary disposition is proper under MCR 2.116(C)(10) "if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Id*. at 473-474. "The existence and interpretation of a contract are questions of law reviewed de novo." *Kloian v Domino's Pizza LLC*, 273 Mich App 449, 452; 733 NW2d 766 (2006). We also review de novo as a question of law whether contract language is ambiguous. *Klapp v United Ins Group Agency, Inc*, 468 Mich 459, 463; 663 NW2d 447 (2003). "Whether a specific party has been unjustly enriched is generally a question of fact," but "whether a claim for unjust enrichment can be maintained is a question of law, which we review de novo." *Morris Pumps v Centerline Piping, Inc*, 273 Mich App 187, 193; 729 NW2d 898 (2006). This Court "review[s] de novo a trial court's dispositional ruling on an equitable matter." *Id*. "When reviewing a decision under MCR 2.116(C)(10), this Court considers the pleadings, admissions, and other evidence submitted by the parties in the light most favorable to the nonmoving party." *Zwiker*, 340 Mich App at 473.

## III. TUITION AND FEES

The central question in this appeal revolves around the existence of either express or implied contracts that would clarify whether tuition payments were intended to cover only in-person instruction. Additionally, there is a question of whether the associated fees were designated to provide access to particular services available on campus. "A party asserting a breach of contract must establish by a preponderance of the evidence that (1) there was a contract (2) which the other party breached (3) thereby resulting in damages to the party claiming breach." *Miller-Davis Co v Ahrens Constr, Inc*, 495 Mich 161, 178; 848 NW2d 95 (2014). "The party seeking to enforce a contract bears the burden of proving that the contract exists." *AFT Mich v State of Michigan*, 497 Mich 197, 235; 866 NW2d 782 (2015). Moreover, the party claiming a breach of contract is required to prove the "*terms*" of the contract that the defendant allegedly breached. *Van Buren Charter Twp v Visteon Corp*, 319 Mich App 538, 554; 904 NW2d 192 (2017) (emphasis added).

A contract may be express or implied. *McInerney v Detroit Trust Co*, 279 Mich 42, 46; 271 NW 545 (1937). An express contract has been defined as "one in which the terms were openly uttered and avowed at the time of the making" or "one where the intention of the parties and the terms of the agreement are declared or expressed by the parties, in writing or orally, at the time it is entered into." *Id*. (quotation marks and citations omitted).

Alternatively, a contract may instead be implied from the circumstances:

There are two kinds of implied contracts: one implied in fact and the other implied in law. The first does not exist, unless the minds of the parties meet, by reason of

words or conduct. The second is quasi or constructive, and does not require a meeting of minds, but is imposed by fiction of law, to enable justice to be accomplished, even in case no contract was intended. [*McInerney*, 279 Mich at 49 (quotation marks and citations omitted); see also *City of Highland Park v State Land Bank Authority*, 340 Mich App 593, 604; 986 NW2d 638 (2022) (stating the same rule).]

Thus, an implied-in-fact contract requires mutual assent just like any other contract; however, in the case of an implied-in-fact contract, the mutual assent is inferred from the parties' words and actions since the parties did not directly express their mutual assent and intent to contract. *McInerney*, 279 Mich at 49; *Erickson v Goodell Oil Co*, 384 Mich 207, 212; 180 NW2d 798 (1970). "A contract is implied in fact where the intention as to it is not manifested by direct or explicit words between the parties, but is to be gathered by implication or proper deduction from the conduct of the parties, language used or things done by them, or other pertinent circumstances attending the transaction." *Erickson*, 384 Mich at 212. "A contract implied in fact arises under circumstances which, according to the ordinary course of dealing and common understanding, of [people], show a mutual intention to contract." *Id*. at 211-212.

In contrast, the concept of an implied-in-law contract—which is a quasi-contract—is intricately linked with the concept of unjust enrichment. See *McInerney*, 279 Mich at 49; *City of Highland Park*, 340 Mich App at 604 ("Quasi-contract doctrine is itself a subset of the law of unjust enrichment.") (quotation marks and citation omitted).

"A valid contract requires five elements: (1) parties competent to contract, (2) a proper subject matter, (3) legal consideration, (4) mutuality of agreement, and (5) mutuality of obligation." *AFT Mich*, 497 Mich at 235. "Fundamentally, a contract is a promise or a set of promises for which the law recognizes a remedy in the event of a breach of those promises. 1 Restatement Contracts, 2d, § 1, p 5. A promise, in turn, is 'a manifestation of intention to act or refrain from acting in a specified way, so made as to justify a promisee in understanding that a commitment has been made.' *Id*. at § 2, p 8." *Bodnar v St John Providence, Inc*, 327 Mich App 203, 212; 933 NW2d 363 (2019). "Before a contract can be completed, there must be an offer and acceptance . . . . Further, a contract requires mutual assent or a meeting of the minds on all the essential terms." *Kloian*, 273 Mich App at 452-453 (quotation marks and citation omitted). "A meeting of the minds is judged by an objective standard, looking to the express words of the parties and their visible acts, not their subjective states of mind." *Id*. at 454 (quotation marks and citation omitted).

Here, Simmons does not direct this Court's attention to any evidence in the record showing that NMU ever made an express promise to provide exclusively in-person instruction under all circumstances or any types or forms of services on campus. Hence, Simmons has not sown to this Court any evidence of an express contract that contains a promise by NMU to exclusively provide in-person instruction or any specific types of services under all circumstances. *McInerney*, 279 Mich at 46; *Van Buren Charter Twp*, 319 Mich App at 554; *Bodnar*, 327 Mich App at 212.

Simmons contends that there existed an implied-in-fact contract stipulating that NMU would provide in-person instruction in exchange for tuition payments unless a class was explicitly designated as online at the time of student registration. According to Simmons, this assertion is

grounded in NMU's written communications and the established course of conduct between the parties, particularly reflecting the traditional practice of delivering college education through direct, face-to-face instruction.

Regarding the "written representations" that Simmons claims to support her position, she refers to a billing statement included in the case documentation. This billing statement outlines Simmons's course schedule alongside itemized charges for tuition, a variety of fees, and room and board expenses. However, this document does not contain any language or promises indicating that NMU guaranteed any specific method of instruction or type of service, regardless of circumstances.

Additionally, Simmons provides context from her deposition transcript, where she expressed her expectation of receiving in-person classes and related experiences in return for her tuition investments. Furthermore, she references the deposition of NMU's Vice President for Finance Administration, who acknowledged that in-person instruction had historically been recognized as the "traditional format" for course delivery at the institution. This response from NMU's administration underscores the prevailing understanding of educational delivery methods before the shift in circumstances; thus, Simmons argues, adding weight to her argument.

Even assuming there is a general implied right to receive education and services in exchange for tuition and fees, see *Allen v Mich State Univ*, ___ Mich App ___, ___; ___ NW3d ___ (2024) (Docket No. 358135); slip op at 26 (assuming without deciding that there was "an implied-in-fact contract agreeing to exchange tuition for educational instruction and fees for various student activities"), there is no legal authority supporting the contention that such an implied right extends to the precise manner of instructional delivery or type of service, see *id*. at ___; slip op at 24 (discussing a university's essential freedom to determine "what may be taught [and] how it shall be taught") (quotation marks and citation omitted). In light of the university's express written indication that courses were subject to change, there is no genuine issue of material fact that "there was no offer—and thus no meeting of the minds—on any specific format for delivering education and services," and therefore, no enforceable contractual promise on these matters. *Id*. at ___; slip op at 25. Consequently, the trial court did not err in granting NMU summary disposition on the express and implied-in-fact contract claims regarding tuition and fees.

## IV. ROOM AND BOARD

Simmons argues that the trial court erred by dismissing her room-and-board contract claim. The record contains an express written contract between Simmons and NMU for Simmons's housing and meal plan. Thus, the first element of a breach of contract claim—the existence of a contract—was satisfied. *Miller-Davis Co*, 495 Mich at 178. The issue is whether there was any genuine issue of material fact regarding whether a breach occurred.

Simmons asserts in her appeal, mirroring the claims made in her first amended complaint, that NMU breached its contractual obligations. She contends that NMU failed to issue a full prorated refund for the remaining portion of the semester after she vacated her university housing and ceased utilizing her meal plan, actions prompted by the onset of the COVID-19 pandemic. In response to the situation, NMU proposed a credit of $820 to students who had to relocate from

university housing due to pandemic-related circumstances. Still, Simmons argues that this compensation is insufficient and does not fulfill the school's contractual responsibilities.

The housing contract contains a provision stating that NMU "is not liable for failure to perform an obligation under this Agreement in the event that such failure is caused by or due to acts or regulations of public authorities . . . epidemic . . . or any other cause beyond the reasonable control of [NMU]." The trial court determined that COVID-19 fell under this description, allowing NMU to invoke this contractual provision to encourage students to vacate university housing. "Generally, the purpose of a force-majeure clause is to relieve a party from penalties for breach of contract when circumstances beyond the party's control render performance untenable or impossible." *Kyocera Corp v Hemlock Semiconductor, LLC*, 313 Mich App 437, 438-439; 886 NW2d 445 (2015). "When contract language is clear, unambiguous, and has a definite meaning, courts do not have the ability to write a different contract for the parties, or to consider extrinsic testimony to determine the parties' intent." *Id*. at 446 (quotation marks and citation omitted). The trial court did not err by granting summary disposition in favor of NMU on this claim.

## V. UNJUST ENRICHMENT

Simmons further contends that the trial court incorrectly dismissed her claims of unjust enrichment. "To show that a benefit would unjustly enrich the defendant, the plaintiff must establish that the defendant received a benefit from the plaintiff and that it would be inequitable for the defendant to keep the benefit." *Zwiker*, 340 Mich App at 482. However, "[c]ourts may not imply a contract under an unjust-enrichment theory if there is an express agreement covering the same subject matter." *Id*.

As described above, there was an express contract covering the subject of room and board. The trial court, therefore, did not err by granting summary disposition on Simmons's unjust enrichment claim involving room and board. *Id*.

Next, we turn to tuition and fees. As mentioned earlier, lacking from the record is evidence of an express or implied contract specifying the requirement for education and services to be provided in a particular format. Notably, Simmons acknowledged that NMU charged higher tuition rates for its online courses than those offered in person. Furthermore, she does not dispute that after her classes transitioned to online platforms, she was not required to pay any additional tuition fees. While some services experienced modifications or were outright canceled in response to the pandemic, it is evident that the university continued to support students, albeit in a manner that may have differed from the customary offerings. Despite these challenges, strong evidence suggests that Simmons directly benefited from the services funded by these tuition and fee structures. For instance, during the Spring 2020 semester, she utilized a school-owned computer with specialized software to aid her studies. As this Court recently noted, "It is undeniable that courses were initially offered as in-person classes and that on-campus events were canceled due to an unexpected global crisis, the pandemic. Nevertheless, Michigan State University (MSU) successfully upheld the core of its educational mission—ensuring the delivery of instruction and various essential services to students—throughout this tumultuous period. Moreover, there was never any written agreement stipulating the format in which education and services were to be provided. Consequently, it is entirely fair and reasonable for MSU to retain the tuition and fees it has collected during this time. [*Zwiker*, 340 Mich App at 482]; see also [*Dumas v Auto Club Ins*

*Ass'n*, 437 Mich 521, 546; 473 NW2d 652 (1991)] (opinion by RILEY, J.) (concluding that there was no unjust enrichment when an employer made changes to the compensation plan that were not prohibited by contractual agreement with the employees)." [*Allen*, ___ Mich App at ___; slip op at 26.] The same analysis is equally applicable to this case. Simmons has not demonstrated that NMU's retention of tuition and fees was unjust. The trial court properly granted summary disposition in favor of NMU on the tuition and fee-based unjust enrichment claims.

## VI. CONCLUSION

We affirm the trial court's rulings in full. To the extent that our reasoning on any of the above issues in this opinion differs from that of the trial court, "[w]e will affirm a trial court's decision on a motion for summary disposition if it reached the correct result, even if our reasoning differs." *Kyocera Corp*, 313 Mich App at 449.

Affirmed. Defendant, having prevailed in full, is entitled to tax costs. MCR 7.219(A).

/s/ Stephen L. Borrello
/s/ Noah P. Hood
/s/ Adrienne N. Young