*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEYTON PAYMON, Individually and on Behalf of
All Others Similarly Situated,

UNPUBLISHED
December 04, 2024
12:20 PM

        Plaintiff-Appellant,

v

No. 358128
Court of Claims
LC No. 20-000059-MK

WAYNE STATE UNIVERSITY and BOARD OF
GOVERNORS OF WAYNE STATE UNIVERSITY,

        Defendants-Appellees.

Before: BORRELLO, P.J., and N. P. HOOD and YOUNG, JJ.

PER CURIAM.

Plaintiff, Peyton Paymon, appeals by right the trial orders granting summary disposition to defendants, Wayne State University and the Board of Governors of Wayne State University (collectively, WSU), under MCR 2.116(C)(10) on Paymon's breach of contract and unjust enrichment claims and denying Paymon's motion for leave to amend her complaint. For the reasons set forth in this opinion, we affirm.

## I. BACKGROUND

This case originates from WSU's response to the COVID-19 pandemic during the spring semester of 2020. Paymon initiated this action in the Court of Claims on April 20, 2020. In her complaint, she alleged that in March 2020, while enrolled at WSU, the university transitioned all classes to an online format, instructed students residing in on-campus housing to vacate if feasible, and canceled on-campus activities due to the COVID-19 pandemic. Paymon contended that these actions deprived her of the benefits associated with in-person instruction, room and board, and student activities for which she had incurred expenses. Although WSU had offered an $850 credit to students who vacated on-campus residences, it was alleged that WSU failed to provide adequate refunds for tuition, room and board, and other associated fees. In her complaint, Paymon sought partial refunds for tuition, room and board, and fee payments based on claims of breach of contract and unjust enrichment. She asserted breach of contract claims and unjust enrichment claims about each of the three payment categories listed above. WSU moved for summary disposition. As

relevant to this appeal, the university argued that it was entitled to summary disposition of all three contract claims under MCR 2.116(C)(8) for failure to state a claim because Paymon had not produced or sufficiently alleged the existence of the contractual terms she claimed had been breached regarding tuition and fees. Furthermore, the room and board contract expressly stated that she was not entitled to any refund under the circumstances. WSU argued that Paymon's allegations did not establish that WSU was unjustly enriched at her expense and, regardless, the existence of the parties' Housing and Dining Licensing Agreement precluded Paymon's unjust enrichment claim for room and board because the law will not imply a contract where an express contract covers the same subject matter.

WSU attached evidence to its motion of communications from the university's housing office recommending that students return to their permanent residences while also making clear that housing and dining would remain available for students that chose to stay on campus. The housing office informed students that they could receive an $850 credit if they chose to move out of on-campus housing. Additionally, WSU attached a copy of the parties' Housing and Dining License Agreement. This agreement provided in relevant part:

> I understand that in the event that I do not have an approved cancellation and choose to move out prior to the end of the Occupancy Period, I will remain responsible for all license agreement charges for housing and dining (if applicable) for the entire Occupancy Period.

Paymon opposed the summary disposition motion and attached various promotional materials published by WSU that explained the opportunities students would have to engage with the urban community in Detroit. Paymon also submitted evidence that WSU charged a Student Service Fee, which funded on-campus activities and the maintenance of student technology and computing resources. The trial court issued a written opinion and order granting summary disposition under MCR 2.116(C)(10) to WSU on all of Paymon's claims, with the exception of the unjust enrichment claim involving fees. The court ruled that WSU was entitled to judgment as a matter of law on Paymon's tuition-based contract claim because Paymon's evidence did not establish a genuine question of material fact that WSU made a contractually binding promise to provide only in-person instruction under all circumstances. The court further reasoned that Paymon had not claimed that any other specific documents comprised the alleged contract. The trial court ruled that WSU was also entitled to judgment as a matter of law on the fee-based contract claim because there was no evidence of the alleged contract. The court noted that the document that Paymon provided regarding the Student Service Fee did not promise services to be provided in exchange for the fee, even though it described the primary uses of funds collected through this fee.

Next, the trial court ruled that WSU was entitled to judgment as a matter of law on the room-and-board contract claim because there was no genuine issue of material fact regarding whether WSU had breached the contract. The court noted that the contract provided that students were liable for the room-and-board charges for the entire semester unless they obtained a cancellation, that WSU continued to offer room and board to students who chose to stay on campus, and that WSU offered an $850 credit to students who chose to move out. Regarding unjust enrichment, the trial court ruled that the existence of an express written contract for room and board precluded an unjust enrichment claim on that subject and that WSU's evidence that

-2-

tuition was charged based on credit hour (and not whether the class was taught in person or online) showed that WSU did not receive a windfall and precluded the unjust enrichment claim based on tuition. However, the court determined that WSU had not provided evidence to establish that it was not unjustly enriched by retaining Paymon's fees and that Paymon had sufficiently pleaded this claim.

Paymon subsequently moved for leave to amend her complaint. She asserted in pertinent part that the amendment would not be futile because she included new factual allegations, including "properly identify[ing] the relevant contracts at issue in this case." Paymon attached to her proposed amended complaint a document providing financial terms and conditions, which stated in pertinent part:

> I understand that when I register for any classes at Wayne State University or receive any service from Wayne State University I accept full responsibility to pay all tuition, fees and other associated costs assessed as a result of my registration and/or receipt of services. I further understand and agree that my registration and acceptance of these terms constitutes a promissory note agreement (i.e., a financial obligation in the form of an educational loan as defined by the U.S. Bankruptcy Code at 11 U.S.C. §523(a)(8)) in which Wayne State University is providing me educational services, deferring some or all of my payment obligation for those services, and I promise to pay for all assessed tuition, fees and other associated costs by the published or assigned due date.

The document further provided that it "constitute[d] the entire agreement between the parties with respect to the matters described."

The trial court denied leave to amend on the basis that amendment would be futile. Specifically, the court concluded that the financial responsibility document relied on by Paymon did not contain a promise for in-person instruction and made payment conditional on registration, undermining her argument that she was owed a refund. The court further concluded that this document also did not contain any promise that certain types of services would be provided in exchange for fees. Paymon's allegation that the university's on-campus housing was not fit for its intended use due to the Governor's shelter-in-place order was not supported because some students remained in on-campus housing, and her attempts to assert unjust enrichment claims failed for reasons the court had previously described.

WSU moved for summary disposition under MCR 2.116(C)(10) on the basis that the financial responsibility document precluded Paymon's unjust enrichment claim related to fees. The trial court granted summary disposition on the basis that the financial responsibility document precluded Paymon's unjust enrichment claim for fees because that document (and documents it incorporated) constituted an express contract regarding the matter of fees. This appeal followed.

## II. STANDARD OF REVIEW

This Court reviews de novo a trial court's decision on a motion for summary disposition. *Zwiker v Lake Superior State Univ*, 340 Mich App 448, 473; 986 NW2d 427 (2022). The trial court granted summary disposition to WSU under MCR 2.116(C)(10). Summary disposition is

proper under MCR 2.116(C)(10) "if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Id*. at 473-474. "The existence and interpretation of a contract are questions of law reviewed de novo." *Kloian v Domino's Pizza LLC*, 273 Mich App 449, 452; 733 NW2d 766 (2006). We also review de novo as a question of law whether contract language is ambiguous. *Klapp v United Ins Group Agency, Inc*, 468 Mich 459, 463; 663 NW2d 447 (2003). "Whether a specific party has been unjustly enriched is generally a question of fact," but "whether a claim for unjust enrichment can be maintained is a question of law, which we review de novo." *Morris Pumps v Centerline Piping, Inc*, 273 Mich App 187, 193; 729 NW2d 898 (2006). This Court "review[s] de novo a trial court's dispositional ruling on an equitable matter." *Id*. "When reviewing a decision under MCR 2.116(C)(10), this Court considers the pleadings, admissions, and other evidence submitted by the parties in the light most favorable to the nonmoving party." *Zwiker*, 340 Mich App at 473.

## III. BREACH OF CONTRACT: TUITION AND FEES

Paymon argues on appeal that the trial court erred by concluding that there was no evidence of contracts for exclusively in-person instruction or particular types of student services, and dismissing her breach of contract claims on those grounds. "A party asserting a breach of contract must establish by a preponderance of the evidence that (1) there was a contract (2) which the other party breached (3) thereby resulting in damages to the party claiming breach." *Miller-Davis Co v Ahrens Constr, Inc*, 495 Mich 161, 178; 848 NW2d 95 (2014). "The party seeking to enforce a contract bears the burden of proving that the contract exists." *AFT Mich v State of Michigan*, 497 Mich 197, 235; 866 NW2d 782 (2015). Moreover, the party claiming a breach of contract is required to prove the "*terms*" of the contract that the defendant allegedly breached. *Van Buren Charter Twp v Visteon Corp*, 319 Mich App 538, 554; 904 NW2d 192 (2017) (emphasis added).

A contract may be express or implied. *McInerney v Detroit Trust Co*, 279 Mich 42, 46; 271 NW 545 (1937). An express contract has been defined as "one in which the terms were openly uttered and avowed at the time of the making" or "one where the intention of the parties and the terms of the agreement are declared or expressed by the parties, in writing or orally, at the time it is entered into." *Id*. (quotation marks and citations omitted).

Alternatively, a contract may instead be implied from the circumstances:

> There are two kinds of implied contracts; one implied in fact and the other implied in law. The first does not exist, unless the minds of the parties meet, by reason of words or conduct. The second is quasi or constructive, and does not require a meeting of minds, but is imposed by fiction of law, to enable justice to be accomplished, even in case no contract was intended. [*McInerney*, 279 Mich at 49 (quotation marks and citations omitted); see also *City of Highland Park v State Land Bank Authority*, 340 Mich App 593, 604; 986 NW2d 638 (2022) (stating the same rule).]

Thus, an implied-in-fact contract requires mutual assent just like any other contract; however, in the case of an implied-in-fact contract, the mutual assent is inferred from the parties' words and actions since the parties did not directly express their mutual assent and intent to

-4-

contract. *McInerney*, 279 Mich at 49; *Erickson v Goodell Oil Co*, 384 Mich 207, 212; 180 NW2d 798 (1970).

In contrast, the concept of an implied-in-law contract—which is a quasi-contract—is intricately linked with the concept of unjust enrichment. See *McInerney*, 279 Mich at 49; *City of Highland Park*, 340 Mich App at 604 ("Quasi-contract doctrine is itself a subset of the law of unjust enrichment.") (quotation marks and citation omitted). We will address Paymon's unjust enrichment claims below but first address the issues of express and implied-in-fact contracts.

"A valid contract requires five elements: (1) parties competent to contract, (2) a proper subject matter, (3) legal consideration, (4) mutuality of agreement, and (5) mutuality of obligation." *AFT Mich*, 497 Mich at 235. "Fundamentally, a contract is a promise or a set of promises for which the law recognizes a remedy in the event of a breach of those promises. 1 Restatement Contracts, 2d, § 1, p 5. A promise, in turn, is 'a manifestation of intention to act or refrain from acting in a specified way, so made as to justify a promisee in understanding that a commitment has been made.' *Id*. at § 2, p 8." *Bodnar v St John Providence, Inc*, 327 Mich App 203, 212; 933 NW2d 363 (2019). "Before a contract can be completed, there must be an offer and acceptance . . . . Further, a contract requires mutual assent or a meeting of the minds on all the essential terms." *Kloian*, 273 Mich App at 452-453 (quotation marks and citation omitted). "A meeting of the minds is judged by an objective standard, looking to the express words of the parties and their visible acts, not their subjective states of mind." *Id*. at 454 (quotation marks and citation omitted).

Here, there was no evidence of any written or oral expression showing that WSU had ever made a promise to provide exclusively in-person instruction under all circumstances in exchange for tuition or any particular type of student services (on campus or otherwise) under all circumstances in exchange for fees. On appeal, Paymon does not cite any language in any of the documents in the record evidencing such promises. There is simply no evidence that an express contract exists containing a promise by WSU that it would exclusively provide in-person instruction, or any specific types of services, under all circumstances. *McInerney*, 279 Mich at 46; *Van Buren Charter Twp*, 319 Mich App at 554; *Bodnar*, 327 Mich App at 212.

Paymon does not even appear to seriously claim that an express contract existed. Instead, she seems to primarily argue that there was an implied-in-fact contract that in-person instruction would be provided in exchange for tuition unless a class had been specifically designated as an online class at the time of registration, and that on-campus services would be provided in exchange for fees, based on WSU's publications and the parties' course of conduct in light of the historical practice of in-person college education.

It appears that a student has an implied contractual right to continued enrollment and receipt of educational services free from *arbitrary* dismissal. *Allen v Mich State Univ*, ___ Mich App ___, ___; ___ NW3d ___ (2024) (Docket No. 358135); slip op at 25-26. Furthermore, as this Court has recently held, there is no rule under Michigan law that student handbooks, course catalogs, and other similar college informational materials can *never* establish contractual relations. *Id*. at ___; slip op at 23-24.

However, in this case, Paymon argues for a much more specific right regarding the way education and other services are delivered—i.e., the right to exclusively in-person instruction and on-campus services under all circumstances—that should be implied from the mere fact that she was enrolled at the university and paid her tuition and fees. Paymon does not claim to have even alleged any facts (as opposed to mere conclusory assertions) from which such inferences could be drawn, much less provided any evidence to support them. Even assuming that there is a general implied right to receive education and services in exchange for tuition and fees, see *id*. at ___; slip op at 26 (assuming without deciding that there was "an implied-in-fact contract agreeing to exchange tuition for educational instruction and fees for various student activities"), there is no legal authority supporting the contention that such an implied right extends to the precise manner of instructional delivery or type of service, see *Id*. at ___; slip op at 24 (discussing a university's essential freedom to determine "what may be taught [and] how it shall be taught") (quotation marks and citation omitted). We note that it was Paymon's burden, as plaintiff, to prove the existence of the contractual terms she seeks to enforce, *AFT Mich*, 497 Mich at 235; *Van Buren Charter Twp*, 319 Mich App at 554, and it was insufficient to rest on the allegations in her pleading, MCR 2.116(G)(4). Paymon therefore had to provide some evidence from which an inference of WSU's offer to provide such specific types of instruction and services could be made. *Bodnar*, 327 Mich App at 212; *Kloian*, 273 Mich App at 452-454; see also *Kloian*, 273 Mich App at 453 ("An offer is defined as the manifestation of willingness to enter into a bargain, so made as to justify another person in understanding that his assent to that bargain is invited and will conclude it.") (internal? quotation marks and citation omitted). Without evidence of an offer by WSU, there could be no mutual assent and thus no implied-in-fact contract. *Kloian*, 273 Mich App at 452-454; *McInerney*, 279 Mich at 49; *Erickson*, 384 Mich at 212. Paymon failed to provide such evidence, and the trial court's decision to dismiss the breach of contract claims related to tuition and fees was not erroneous.

To the extent Paymon argues that she needed further discovery, she does not specifically describe the evidence she believes would be found. She implies that she will unearth evidence of a contract to provide a basis for her claims. This assertion is belied by the present record which lacks any evidence of this alleged contract. Paymon has not shown that she is entitled to further discovery, as she has yet to demonstrate that it has any chance of uncovering factual support for her position. *Marilyn Froling Revocable Living Trust v Bloomfield Hills Country Club*, 283 Mich App 264, 292-293; 769 NW2d 234 (2009).

## IV. BREACH OF CONTRACT: ROOM AND BOARD

Paymon contends that the trial court wrongly granted summary judgment on her breach-of-contract claim regarding room and board. The court determined there was no genuine issue of material fact, asserting that WSU had not breached the contract. This was based on the contract stipulating that students were responsible for room-and-board fees for the entire semester unless they withdrew. Additionally, WSU continued to provide room and board for those who remained on campus and offered an $850 credit to students who opted to move out. On appeal, Paymon asserts that the trial court's reasoning was erroneous. But, she merely makes a bald assertion of error. A "mere statement without authority is insufficient to bring an issue before this Court, and it "is not sufficient for a party simply to announce a position or assert an error and then leave it up to this Court to discover and rationalize the basis for his claims, or unravel and elaborate for him his arguments, and then search for authority either to sustain or reject his position." *Wilson v*

*Taylor*, 457 Mich 232, 243; 577 NW2d 100 (1998) (quotation marks and citation omitted). Accordingly, Paymon has abandoned this claim of error.

Instead of addressing the trial court's reasoning, Paymon makes a new argument regarding frustration of purpose. This argument was not raised and addressed below; thus, it is unpreserved and we decline to consider it. "In civil cases, Michigan follows 'the "raise or waive" rule of appellate review.' " *Tolas Oil & Gas Exploration Co v Bach Servs & Mfg, LLC*, ___ Mich App ___, ___; ___ NW3d ___ (2023) (Docket No. 359090); slip op at 2. Plain-error review does not apply in civil cases. *Id*. at ___; slip op at 5.

## V. UNJUST ENRICHMENT

Next, Paymon argues that the trial court erred by dismissing her unjust enrichment claims. "To show that a benefit would unjustly enrich the defendant, the plaintiff must establish that the defendant received a benefit from the plaintiff and that it would be inequitable for the defendant to keep the benefit." *Zwiker*, 340 Mich App at 482. However, "[c]ourts may not imply a contract under an unjust-enrichment theory if there is an express agreement covering the same subject matter." *Id*. Here, the record contains the Housing and Dining License Agreement, which is an express contract covering the subject of room and board. The record also contains the financial responsibility agreement, which is an express contract that covers the issues regarding students' responsibility to pay tuition and fees.[1] Accordingly, the trial court did not err by dismissing Paymon's unjust enrichment claims. *Id*.

## VI. LEAVE TO AMEND COMPLAINT

Finally, Paymon argues that the trial court abused its discretion by denying her motion for leave to amend her complaint on the ground of futility.

This Court reviews for an abuse of discretion a trial court's denial of a motion to amend a complaint. *Id*. at 474. The trial court abuses its discretion when its decision falls outside the range of reasonable and principled outcomes. *Id*.

A party may move to amend the pleadings after the trial court grants summary disposition under MCR 2.116(C)(10) "unless the evidence then before the court shows that amendment would not be justified." MCR 2.116(I)(5). "Leave shall be freely given when justice so requires." MCR 2.118(A)(2). However, the trial court may deny the motion if the amendment would be futile. *Zwiker*, 340 Mich App at 484. A proposed amendment is futile when "summary disposition would be appropriately granted regarding the new claims, either when a party has not established a genuine issue of material fact regarding an element . . . or when the undisputed facts establish that summary disposition would be appropriate . . . ." *Id*.

On appeal, Paymon asserts that her proposed amendments were not futile because the additional allegations strengthen her claims. However, she fails to provide evidence supporting the

---

[1] We reiterate, this document does *not* contain any promise by WSU to provide exclusively in-person instruction or any particular types of services.

conclusion that WSU made the specific promises she seeks to enforce. Consequently, Paymon could not establish a genuine question of material fact that would prevent summary disposition from being warranted on all her claims. Therefore, the trial court did not abuse its discretion in denying her leave to amend.

## VII. CONCLUSION

We affirm the trial court's rulings in full. To the extent our reasoning on any of the above issues in this opinion differs from that of the trial court, "[w]e will affirm a trial court's decision on a motion for summary disposition if it reached the correct result, even if our reasoning differs." *Kyocera Corp v Hemlock Semiconductor, LLC*, 313 Mich App 437, 449; 886 NW2d 445 (2015).

Affirmed. Defendant, having prevailed in full, is entitled to tax costs. MCR 7.219(A).

/s/ Stephen L. Borrello
/s/ Noah P. Hood
/s/ Adrienne N. Young